## SOUTH CAROLINA INSURANCE COMPANY, Plaintiff,

v.

## Frances M. COODY, et al., Defendants.

### No. 5:92–CV–54–4 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

March 14, 1997.

---

William S. Goodman, Edward H. Lindsey, Jr., Kathryn A. Cater, Atlanta, GA, for South Carolina Ins. Co.

Linwood Robert Lovett, J. Douglas Cowart, Macon, GA, for Frances M. Coody and Timothy A. McCord.

## ORDER

OWENS, District Judge.

Plaintiff insurance company issued a real property insurance policy to defendant Trust in 1984, and subsequently filed suit seeking a declaratory judgment that it is not liable under the policy for cleanup costs associated with the release of hazardous material on the property. Now before the court is plaintiff's renewed motion for summary judgment on the issue of its not having received notice of an "occurrence" within a reasonable time as required by the 1984 policy. The basic facts involved in this dispute were set out in the court's order of February 11, 1993. *See South Carolina Insurance Co. v. Coody,* 813 F.Supp. 1570 (M.D.Ga.1993). Having carefully considered the arguments of counsel, the relevant case law, and the record as a whole the court issues the following order.

## BACKGROUND

In its order of February 11, 1993, the court denied plaintiff's motion for summary judgment with regard to the 1984 policy. On the issue of reasonable notice, the court stated that it could not at that time "find as a matter of law that defendants should have known of the Trust's potential liability prior to notification by the EPD and EPA." *Coody,* 813 F.Supp. at 1580 (referring to Georgia's Environmental Protection Division and the federal Environmental Protection Agency).

Plaintiff filed this renewed motion for summary judgment based on the notice issue. In conjunction with its motion, plaintiff has presented additional evidence which it claims shows that defendants were aware of possible liability under the policy as early as 1987 and did not provide notice "as soon as practicable" as required by the policy. Specifically, plaintiff has filed with the court depositions taken of two attorneys with King and Spalding who represented Timothy McCord and Concrete Sales in their discussions with the EPD from September 1988 through 1990, and billing records and correspondence related to that representation.

The defendant Trust, through its trustees Timothy A. McCord and Frances M. Coody, responds by merely restating its position that: (1) there remain genuine issues of material fact with regard to whether notice was provided within a reasonable time, and (2) even if notice was unreasonable, the delay is justified because defendant Tim McCord was not aware that the Trust was potentially liable or that there would be coverage under the 1984 policy.

## FACTS[1]

Defendant Trust owned the property in question from 1984 until 1987, during which

---

1. As mentioned previously, most of the facts involved were summarized in the court's prior opinion. In this order, the court sets forth only those facts pertinent to the notice issue. Unless

time Peach Metal Industries ("PMI") conducted electroplating activity that caused the release of hazardous materials on and around the property [2] Defendant Timothy McCord learned about the environmental damage to the property at the very latest in the summer of 1987, when he spoke to Al DeGraw, president of Peach Metal Industries ("PMI"), about the EPD's investigation of the property. DeGraw has filed an affidavit stating that during this conversation he informed McCord that the owner of the property (i.e. the Trust) could be held ultimately responsible for the waste. DeGraw offered to buy the property from the Trust, but McCord refused and stated that he would deal with the problem himself.

Soon after his discussion with DeGraw, McCord formed a new corporation named Concrete Sales and Services, Inc. ("Concrete Sales"), which was owned exclusively by the Trust and whose president was Tim McCord. One month after incorporation, on September 19, 1987, the Trust transferred the property to Concrete Sales [3]

On February 12, 1988, Barbara Smith of the EPD phoned Tim McCord to inquire about his ownership of the property. McCord told Smith that the property was not owned by him but by Concrete Sales, of which he was president. Ms. Smith memorialized the conversation in a February 16, 1988 memorandum to her supervisor at EPD, Howard Barefoot. The memorandum states: "I explained to [McCord] that the ultimate person responsible for the clean up [sic] of Peach Metal Industries was the owner of the property."

McCord was again contacted by the EPD in a letter from John Taylor dated May 5, 1988 and addressed to Concrete Sales. This letter again states that "Under State and Federal laws, both the owner and operator of the facility are accountable for compliance with hazardous waste management requirements. As you may know, Administrative Order EPD–HW–413 (copy enclosed) has already been issued to the operator, Peach Metal Industries." The letter goes on to say "I have enclosed for your perusal a copy of the Georgia Hazardous Waste Management Act and the Rules for Hazardous Waste Management." McCord responded to this letter by writing a memorandum to John Taylor explaining that he wished to help resolve the issue, and stating that he would be reviewing the materials provided in the letter until he heard from the EPD again.

On July 13, 1988, McCord met with four employees of the EPD to discuss the contamination problem and ways to resolve it. The topics covered at the meeting were memorialized by Barbara Smith in another memorandum to Howard Barefoot dated July 20, 1988. The memorandum shows that EPD employee Jennifer Kaduck explained to McCord the background and purpose of the Hazardous Waste Management Program and its connection with the EPD. Kaduck also informed McCord once again that under state law the owner and operator of a facility must notify the EPD of hazardous waste activities and make corrections, and that because PMI was bankrupt, it was up to Concrete Sales as the property owner to make corrections. The memorandum also shows that McCord asked a number of questions at the meeting, including whether the chemical manufacturers could be held responsible and whether PMI had insurance that would cover cleanup costs. McCord wrote back to Ms. Kaduck at the EPD on August 10, 1988, stating that he had spoken to "several lawyers" regarding the property and that he was working on the problem (Def.Exh. B–10).

---

otherwise noted, these facts are undisputed and are taken from defendants' briefs in an attempt to view the facts in a light most favorable to the party opposing summary judgment.

**2.** This fact alone establishes liability under the Georgia Hazardous Waste Management Act. *See* O.C.G.A. § 12–8–92(3)(B), (9)(A) (defining a facility as any site where hazardous material was deposited, and defining a "person who has con-

tributed or is contributing to a release" as an owner or operator of a facility).

**3.** Plaintiff's briefs point out that Concrete Sales is not in good standing with the Georgia Secretary of State, has never filed a tax return or conducted any business in any state, owns little in assets other than the title to the property that is the subject of this lawsuit, and had all of its legal bills paid by the Trust.

In October 1988 Tim McCord retained King and Spalding to represent Concrete Sales in negotiations with the EPD regarding the property. This representation lasted until October 1990. According to the depositions filed by plaintiff, the lawyers who worked with McCord were Charles Teasdale and Les Oakes, who combined had over twenty years of experience in environmental law. Both lawyers testified in their depositions that they were aware that both Georgia and federal law at the time allowed for prior owners of properties on which hazardous chemicals were released to be held liable for cleanup costs associated with that release. However, both lawyers also testified that in their experience, the EPD had only attempted to hold a prior owner liable in one instance, and had met with little success in that one instance. The depositions provide little information about the substantive content of the representation.[4]

Despite the fact that the property was at the time owned by Concrete Sales, in December 1988 McCord contacted his insurance agent and attempted to have the property added to another insurance policy held in the Trust's name (the 1988 policy). Plaintiff denied the first request to add the property. McCord changed the description of the property and again attempted to have it added to the 1988 policy. This time, plaintiff granted the request, and the property was added to the 1988 policy effective January 6, 1989. Thus, McCord procured additional insurance on the Trust's policy covering the property four months after he had transferred the property out of the Trust's name and over to Concrete Sales.

The EPD notified McCord on December 13, 1990 that it had learned that Concrete Sales had bought the property in 1988 short-ly after the EPD had begun its investigation of the property. In this letter for the first time, the EPD explicitly states that the Trust would ultimately be held responsible as the owner of the property from 1984 through 1987. McCord, through his attorney L. Robert Lovett, notified plaintiff on December 30, 1990 that there was a potential claim or occurrence under the 1984 and 1988 policies involving cleanup costs.

McCord maintains that he was not aware that the Trust might be liable as a prior owner for the cleanup costs associated with the property until he received the EPD's letter explicitly stating so on December 13, 1990. He therefore argues that the December 30, 1990 letter constitutes sufficient notification within the terms of the prompt notice provision of the 1984 policy.

## DISCUSSION

The case law is clear with regard to prompt notice provisions in insurance policies. Compliance with a prompt notice provision acts as a condition precedent to coverage under the policy. *Richmond v. Georgia Farm Bureau Mutual Insurance Co.*, 140 Ga.App. 215, 231 S.E.2d 245, 250 (1976). "The purpose of a notice provision in an insurance policy is to enable an insurer to investigate promptly the facts surrounding the occurrence while they are still fresh and the witnesses are still available, to prepare for a defense of the action, and, in a proper case, to determine the feasibility of settlement of the claim." *Id.* The duty to provide notice to the insurer is triggered when the insured actually knew or should have known of the possibility that it might be held liable for the occurrence in question. *Canadyne–Georgia Corp. v. Continental Insurance Co.*, 1992 WL 547722, *5 (N.D.Ga.1992), *aff'd Ca-*

---

**4.** Defendants aver that most of the questions regarding the content of the representation are protected by the attorney-client privilege. The court is not at all convinced that this is the case. Defendants state on page 9 of their response to plaintiff's original motion for summary judgment [Tab # 49] that Concrete Sales was at all times advised that the EPD was taking action against Concrete Sales rather than the Trust. By disclosing some of the content of the representation, it may well be that defendants have placed the portion of the representation dealing with poten-tial liability into issue and waived the protection of the privilege thereto. *See Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir.1994) (holding that the attorney client privilege was intended as a shield, not a sword, and that a defendant may not use the privilege to disclose selected communications for self-serving purposes). Nevertheless, plaintiff has not argued that the content of the representation is discoverable, and the court need not address the issue of improper use of the privilege in reaching its decision on the notice issue.

*nadyne–Georgia Corp. v. Continental Insurance Co.,* 999 F.2d 1547, 1556–57 (11th Cir. 1993). On the other hand, a defendant cannot avoid the requirement of prompt notice by claiming that it believed it was not liable. *Richmond,* 231 S.E.2d at 249.[5]

When these rules are applied to the present case, it becomes clear that defendant Trust's second argument—that it was not aware it was potentially liable—does not determine the issue of whether the requirements of the notice provision were satisfied. Even if true, the fact that it was not actually aware of its potential liability does not mean the duty to notify was not triggered under the policy, because that duty is also triggered if it should have known it was potentially liable. Likewise, the Trust's subjective belief that it was not liable cannot be used to justify any delay in notifying the insured.

■ Thus, this court's prior opinion framed the first issue properly: Can the court "find as a matter of law that defendants should have known of the Trust's potential liability prior to notification by the EPD and EPA"? *Coody,* 813 F.Supp. at 1580. *Canadyne–Georgia,* 1992 WL 547722, *5 (finding delay in providing notice unreasonable as a matter of law using an identical analysis). If it can, then the point at which McCord should have known the Trust was potentially liable started the clock running on the duty to provide notice "as soon as practicable."

By July 1988, McCord had been notified no less than four separate times that the owner of the property was ultimately responsible under both Georgia and federal law for cleanup costs. McCord was aware that the Trust was the owner of the property during the period of contamination, and that Concrete Sales only acquired the property after the investigation had begun and the contamina-

tion had ceased. McCord had been provided with and had reviewed the Georgia Hazardous Waste Management Act, and had discussed the background and purpose of that Act with employees of the EPD. McCord had discussed the matter with a number of attorneys knowledgeable in the field. McCord had procured additional insurance coverage for the property in the Trust's name, despite the fact that the Trust no longer owned the property.

Anyone in this position should have known that the Trust was potentially liable under the policy. At the July 13 meeting with EPD officials, anyone acting in good faith would have at least inquired into the blatantly obvious likelihood that the owner during the time of pollution, in addition to the current owner, might be liable—especially if that prior owner was also an entity run by him. McCord's failure to do so can at best be viewed as a transparent example of willful blindness. His transfer of the property was likewise an attempt to deceive the EPD through a fraudulent transfer shell game. Accordingly, the court finds that Timothy McCord, and therefore the Trust, knew or should have known that the Trust was potentially liable under the policy at least by the time of the July 13, 1988 meeting with the EPD.

■ The only remaining question is whether the delay in providing notice violated the requirements of the prompt notice provision. The court finds as a matter of law that it did. McCord should have known of the Trust's potential liability from July 13, 1988, but did not provide notice until December 30, 1990. Thus, notice was not provided until two years and five months after he should have known of the potential liability. This was not "as soon as practicable" as the policy required. The unwarranted delay con-

---

5. These last two rules of law might appear to conflict when applied to a defendant who claims it was not aware that it was potentially liable: one appears to protect such a defendant while the other commands that no protection be afforded. However, the two are easily reconciled when one realizes that the test for the first rule contains an objective element while the second applies only to the insured's subjective beliefs. The duty to notify under the prompt notice provision is triggered not only if the insured actually becomes aware of potential liability, but also if it should have known it might be liable. The second rule only states that a defendant's subjective judgment that it is not liable does not justify delay in providing prompt notice, as that determination is appropriately left to the insurer, who bears the ultimate risk of liability under the policy.

stituted a clear violation of the unambiguous terms of the policy. *See, e.g., Richmond,* 231 S.E.2d at 249 (holding an eight month delay unreasonable as a matter of law); *Snow v. Atlanta International Insurance Co.,* 182 Ga. App. 1, 354 S.E.2d 644 (1987) (holding ten month delay unreasonable as a matter of law). Accordingly, it is the court's considered judgment that defendants did not comply with the terms of the prompt notice provision. Because compliance with the notice provision acts as a condition precedent for coverage under the policy, plaintiff cannot be held liable under the 1984 policy.

### CONCLUSION

Plaintiff's renewed motion for summary judgment is **GRANTED.** There being no other claims, the case is **CLOSED.**