The HOLBROOK–MYERS CO., INC., Plaintiff,

v.

TRANSPORTATION INSURANCE COMPANY, Defendant.

No. C.A. 1:03–CV–3082–MHS.

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 7, 2005.

Mark Anthony Smith, III, Office of Mark A. Smith III, Atlanta, GA, for Plaintiff.

Linda Bridgewater Foster, Weissman Nowack Curry & Wilco, Atlanta, GA, Karen H. Howard, PHV, Karen Wilson Howard, PHV, Sepanik Cortner McNaboe Colliau & Elenius, Chicago, IL, for Defendant.

## ORDER

SHOOB, Senior District Judge.

This action is before the Court on defendant Transportation Insurance Company's motion for summary judgment. For the following reasons, the Court grants the motion.

*Background*

Plaintiff Holbrook–Myers Co. ("HM") purchased a comprehensive general liability insurance policy from defendant Transportation Insurance Company ("TIC") for the periods of November 1, 1997 through November 1, 2001, with the policy renewable each year. Under the terms of the policy, HM was to notify TIC "as soon as practicable of an 'occurrence' or an offense which may result in a claim." Commercial General Liability Coverage Form, Section IV.2.a. In addition, if a claim was made or a suit brought against HM, it was required to notify TIC "as soon as practicable" and to "[i]mmediately send [TIC] copies of any demands, notices, summonses, or legal papers received in connection with the claim or 'suit'." *Id.,* Section IV.2.b.(2) and IV.2.c.(1).

HM is engaged in the business of grading and construction. Between 1996 and 1999, HM hired Mableton Hauling, Inc. ("Mableton"), to handle waste disposal from various job sites, including a site operated by Bovis Construction Corporation ("Bovis"). In or about March 1999, Mableton informed HM that it had illegally dumped HM's waste, including waste from the Bovis job site, onto property now known as the White Road Site, owned in part by Jadow Realty Company ("Jadow") and in part by Gerald D. Tankersley. In December 1999, the Georgia Environmental Protection Division ("EPD") sent a letter to HM notifying it that the dumping at the White Road Site violated the Georgia Comprehensive Solid Waste Management Act. At a meeting held on December 17, 1999, HM and other responsible parties discussed the cleanup of the White Road Site. The parties that were then known to have dumped at the unauthorized site formed the White Road Landfill Steering Committee ("Committee"). The purpose of the Committee was to identify all responsible parties and implement a cleanup plan. After this meeting, Bovis and HM reached an agreement whereby HM would assume all liability for Bovis for the waste that originated from its job site. Bovis confirmed this agreement by letter on January 10, 2000. HM did not notify TIC of the December 17, 1999, meeting with the EPD nor did HM forward Bovis's January 10, 2000, letter to TIC.

Although the Committee was continuing to work to clean up the site, Jadow sent an intent to sue letter to the responsible parties, including HM, on December 8, 2000. In January 2001, HM notified its insurance agent, Merritt & McKenzie ("Merritt") of the dumping that occurred at the White Road Site and of Jadow's intent to sue letter. The agent at Merritt submitted a claim to TIC on January 22, 2001, which was the first written notification to TIC of any occurrence at the White Road Site. At that time, TIC received copies of the EPD's December 1999 letter and Jadow's December 2000 letter. The Bovis letter

from January 2000 was not included with the claim.

Jadow filed its lawsuit for damages at the White Road Site against the responsible parties on April 4, 2001. Jadow sent a copy of the complaint to HM's attorney, Mark Smith, but did not immediately serve the complaint on HM. In June 2001, TIC, not knowing that a lawsuit had been filed, denied coverage of HM's claim and reserved its rights under the policy. In July 2001, Jadow served HM with an amended complaint. On August 13, 2001, Mr. Smith filed an answer to the complaint on behalf of HM, but he did not forward a copy of the complaint to TIC until August 24, 2001. TIC claims it did not receive the complaint until September 10, 2001. Following receipt of the amended complaint, TIC again denied coverage of HM's claim.

On December 9, 2002, Jadow and most of the defendants filed a joint motion to approve a settlement agreement and general release ("agreement"). HM then sued both TIC and Mableton to recover the $390,016 paid to Jadow pursuant to the agreement. In the action filed against Mableton, this Court, on September 20, 2004, awarded HM half of this amount, or $195,008. The only remaining action is the instant action between HM and TIC.

TIC moves for summary judgment, alleging that HM failed to meet the notice provisions of the policy. In response, HM argues that it had no knowledge of any potential claim until the December 2000 letter from Jadow, which was promptly sent to TIC through Merritt. In addition, HM claims that TIC in fact had notice through its representation of another defendant in the Jadow action.

*Summary Judgment Standard*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that this burden could be met if the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. At that point, the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. *Id.* at 324, 106 S.Ct. 2548.

In reviewing a motion for summary judgment, the Court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(emphasis in original).

*Discussion*

TIC argues that summary judgment is appropriate because there is no genuine issue as to HM's non-compliance with the insurance policy's notice provisions. First, TIC argues that HM failed to notify it as soon as practicable of a potential claim arising out of the dumping at the White Road Site. Specifically, TIC contends that HM received notice of a potential claim no later than December 17, 1999, during the meeting with the various parties and the EPD, but that TIC's first notification of a claim arising out of the illegal dumping

was HM's filing of a claim through Merritt in January 2001, thirteen months later. Second, TIC argues that HM did not "immediately" forward Jadow's December 8, 2000, intent to sue letter, but waited until January to notify its insurance agent, who did not file a claim with TIC until January 22, 2001. Finally, TIC contends that HM failed to "immediately" forward Jadow's complaint, which it received in April 2001. Instead, HM waited until it was formally served with an amended complaint in July 2001, and even then did not forward a copy of the complaint to TIC until August 24, 2001. TIC points out that when questioned about the delays in providing notice and forwarding documentation, HM's president, Robert Myers, stated that he feared an increase in premiums if TIC became involved and that he thought he could resolve the White Road issue with the Steering Committee for less money that it would cost if TIC got involved.

In response to TIC's motion, HM's main argument rests upon the issue of when there was notice of the Jadow litigation. HM claims that it did not have knowledge of the Jadow "claim" at the December 17, 1999, meeting, but instead only received notice by Jadow's December 8, 2000, intent to sue letter. HM argues that this letter, its first notice of a Jadow "claim" or "suit," was promptly forwarded to TIC through Merritt in January 2001. HM additionally argues that the illegal dumping was not an "occurrence" within the meaning of the policy, since an "occurrence" is defined as "an accident including continuous or repeated exposure to substantially the same general harmful conditions." Therefore, HM contends that because there was no "occurrence," it was not under any duty to notify TIC. Only after Jadow sent its intent to sue letter did HM have knowledge of any "claim" or "suit." As to the "suit,"

HM argues that Jadow did not serve the original complaint on HM and served the amended complaint in July 2001. Once this amended complaint was served, HM forwarded it to TIC in August 2001 after filing its answer with the court.

In addition, citing O.C.G.A. 33–7–15(c), HM argues that TIC received notice of the pending Jadow litigation through another insured, Ellis Astin Grading Co. ("Ellis"). Under this statute, a third party can send "a copy of a summons or other process relating to policy coverage" which would constitute notice of the insured's claim or suit. Ellis was another defendant in the litigation involving the illegal dumping at the White Road Site. Throughout the litigation with Jadow, TIC provided representation to Ellis through its liability policy. Because TIC participated in the litigation with Jadow through its representation of Ellis, HM argues that it had notice of the Jadow suit earlier than it claims. HM additionally contends that because TIC had notice through its coverage of Ellis and participated in Ellis's defense under a policy similar to that of HM, that TIC is now estopped from denying coverage to HM.

TIC's reply brief addresses both the applicability of O.C.G.A. § 33–7–15(c) and HM's argument that TIC is estopped from denying coverage. First, TIC argues that O.C.G.A. § 33–7–15(c) only applies to motor vehicle liability insurance policies, both through the title of the statute and applicable case law. Second, TIC argues that HM cannot claim that TIC is estopped from denying coverage unless HM detrimentally relied upon TIC's representation of Ellis.

The Court concludes that TIC is entitled to summary judgment on two grounds. First, HM failed to abide by the policy

provision requiring it to notify TIC "as soon as practicable" of an occurrence or offense that might result in a claim. Second, HM failed to "immediately" send TIC legal papers it received in connection with the Jadow suit.

 The liability policy between TIC and HM required HM to notify TIC "as soon as practicable" of "an 'occurrence' or an offense which may result in a claim." HM argued in its brief that under Section V of the policy's Commercial General Liability Coverage Form, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Because no accident had occurred, HM argues that it did not violate this policy provision by not informing TIC of any incident at the White Road Site until after it received Jadow's intent to sue letter. However, as the policy states, HM had an obligation to notify TIC of an "occurrence" or "an offense which may result in a claim." While HM claims that there was no accident at the White Road Site, "[t]he duty to provide notice to the insurer is triggered when the insured actually knew or should have known of the possibility that it might be held liable for the occurrence in question." *South Carolina Ins. Co. v. Coody*, 957 F.Supp. 234, 237 (M.D.Ga.1997). If HM had knowledge of a potential claim, it had a duty to notify TIC "as soon as practicable." Because the December 17, 1999, meeting with the EPD put HM on notice of a potential claim by Jadow, HM had a duty under the policy to notify TIC. Therefore, it must be determined whether HM's notification to TIC in January 2001 was "as soon as practicable."

 The issue of whether notice is timely and meets the policy provisions is usually a question of fact for the jury. *See Weis v. International Ins. Co., Inc.*, 567 F.Supp. 631 (N.D.Ga.1983). However, the court can make a determination of timeliness because "an unexcused significant delay may be unreasonable as a matter of law." *Canadyne–Georgia Corp. v. Continental Ins. Co.*, 999 F.2d 1547, 1555 (11th Cir.1993). HM waited nearly thirteen months between the receipt of the December 1999 letter from the EPD and the filing of a claim with Merritt in January 2001. HM has provided no reasonable explanation for this delay of over a year except for fear of an increase in premiums if TIC became involved. In addition, HM argues that the EPD letter did not specifically state that HM was liable to Jadow for illegal dumping. However, "a defendant cannot avoid the requirement of prompt notice by claiming that it believed it was not liable." *South Carolina Ins. Co.*, 957 F.Supp. at 238. The Court finds that this delay of thirteen months was unreasonable as a matter of law and that HM violated the policy provision by not notifying TIC of the illegal dumping at the White Road Site as soon as practicable.

 Assuming that the delay of thirteen months for notice of the occurrence was reasonable, TIC additionally argues that HM violated the policy provision requiring the immediate forwarding of documents arising from a claim or suit. HM did not forward Jadow's intent to sue letter for 44 days. In addition, HM delayed four months in forwarding TIC a copy of the Jadow complaint. TIC's insurance policy stated that HM must "[i]mmediately send us copies of any demands, notices, summons or legal papers received in connection with the claim or 'suit'." The issue for the Court is whether a delay of four months in forwarding a copy of the com-

plaint and of 44 days in forwarding the intent to sue letter to TIC violates this policy provision.

▮ When faced with a similar policy provision, " '[i]mmediately' has been construed in many cases to mean with reasonable diligence and within a reasonable length of time in view of attending circumstances of each particular case." *Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc.*, 209 S.E.2d 6, 10, 132 Ga.App. 714 (1974). In determining whether an insured acted with reasonable diligence and in a reasonable length of time, courts look at the reasons provided by the insured for the delay between receipt of the documents and the forwarding to the insurer. *Id.*

HM first argues that the Jadow intent to sue letter was sent immediately, but was delayed based on limited holiday work schedules during December 2000. Jadow's letter is dated December 8, 2000, yet HM did not notify Merritt until January and Merritt did not file a claim with TIC until January 22, 2001. HM provides no explanation for this 44–day delay other than that the letter was received during the holiday season.

In addition, HM argues that the time between formal service of the amended complaint and the date when the amended complaint was sent to TIC was only one month-between July 24 and August 24, 2001. However, Jadow sent a copy of the original complaint to HM in April 2001 and delayed formal service while it waited on the work of the White Road Landfill Steering Committee. Between April and July 2001, HM and TIC exchanged letters, but HM failed to either notify TIC of its receipt of the complaint or to forward TIC a copy.

The Court concludes that, with respect to both the Jadow intent to sue letter and the Jadow complaint, the evidence establishes as a matter of law that HM violated the policy provision requiring immediate forwarding to TIC of copies of any legal papers received in connection with a claim or suit. Because HM failed to abide by the policy provisions, TIC had no duty to defend or indemnify HM.

▮ As to the applicability of O.C.G.A. § 33–7–15(c), the Court agrees with TIC that this statute is limited to motor vehicle liability insurance. Therefore, TIC's representation of Ellis had no effect upon when TIC received notice of Jadow's claim against HM.

*Summary*

For the foregoing reasons, the Court GRANTS defendant Transportation Insurance Company's motion for summary judgment [# 18–1] and DISMISSES this action.