482 S.E.2d 433 (1997)
224 Ga. App. 697
SOUTHEASTERN EXPRESS SYSTEMS, INC. et. al.
v.
SOUTHERN GUARANTY INSURANCE COMPANY OF GEORGIA.
No. A97A0050.
Court of Appeals of Georgia.
February 17, 1997.
Certiorari Denied May 30, 1997.
Jones, Cork & Miller, Jerry A. Lumley, Macon, for appellants.
*434 Chambers, Mabry, McClelland & Brooks, Robert M. Darroch, Deeann B. Waller, Atlanta, for appellee.
ELDRIDGE, Judge.
On June 9, 1994, Southern Guaranty Insurance Company of Georgia, appellee, brought a declaratory judgment action in the Superior Court of Bibb County against Southeastern Express Systems, Inc., Southeastern Express Systems, Southeastern Brokerage Company, Southeastern Express, George Barnes, Kevin Clark, and Gerry Wambolt to determine coverage regarding a California lawsuit against them. Appellee issued a policy for the coverage period beginning October 25, 1989, with several renewals through October 25, 1991, to George Barnes as the named insured doing business as Southeastern Brokerage Company in the renewal of such policy. Effective October 25, 1992, the policy listed for the first time as named insured Southern Express Systems, Inc. to George Barnes doing business as Southeastern Brokerage Company, after suit had been served against Southeastern Express Systems, Inc. Barnes was the registered agent for Southeastern Express Systems, Inc.; Barnes, Gerry Wambolt, and Kevin Clark are partners doing business as Southeastern Express and Southeastern Brokerage Company, both with principal places of business in Macon, Bibb County, Georgia.
On April 22, 1992, Triad Systems Corporation (Triad), a Delaware corporation with its principal place of business in California, sued Southeastern Express Systems, Inc. and George Barnes in the United States District Court for the Northern District of California, and Barnes was served on April 22, 1992. Barnes did not notify appellee but, within days, hired private counsel to defend against the suit. In October 1992, Triad amended its suit to also name as defendants "Southeastern Express Co., a Georgia de facto partnership, d/b/a Southeastern Brokerage Company and d/b/a Southeastern Express Systems," Kevin Clark, and Gerry Wambolt. Until 1987, Barnes had been an employee of Triad and had entered into various confidentiality agreements with Triad not to use or divulge its proprietary or trade secrets or to seek its customers. Triad sued appellants for selling pre-owned Triad computer hardware and pre-licensed Triad software products without paying a software license fee and without obtaining from the subsequent purchasers an agreement to be bound by Triad's license agreement. Triad contended that appellants knew that Triad's original customers had an agreement to pay subsequent relicensing fees and not to transfer software without a license agreement. In addition, Triad contended that appellants had intentionally encouraged Triad's original customers to violate such agreements; that appellants copied and distributed Triad's manuals without permission in violation of Triad's copyrights; that appellants provided their new customers upgrades of Triad's software without license, permission, or payment of fees to Triad; that appellants provided their customers with illegal copies of Triad's copyrighted software programs; that appellants breached the confidentiality agreements entered into regarding Triad's proprietary property, i.e. operation and service of the hardware, and information contained on the software by transferring, selling, and using such proprietary information without Triad's consent; that appellants violated the California Business and Professions Code by misappropriating Triad's trade secrets and actual and potential Triad customers by advertising that they were familiar with Triad's proprietary property, by inducing Triad's customers to breach their license agreements, and by transferring the software in violation of the license agreement; that appellants intentionally interfered with such license agreements to acquire Triad's customers; that appellants intentionally took customers from Triad by interfering with the license agreements; and that appellants wilfully violated Triad's copyrights for its own economic benefit. Triad alleged that these intentional acts began in 1988 and continued until the time of suit.
The policies issued by appellee expressly excluded coverage of the insured, or other insureds, who engaged in dishonest or fraudulent acts, which exclusion raised serious coverage issues. The alleged wrongful conduct by appellants commenced prior to the initial policy period of October 25, 1989, under policy number 6450, which did not include Southeastern *435 Express Systems, Inc. as a named insured but did include Barnes. The policy numbered 9896 was renewed in the name of Southeastern Express Systems, Inc. for the first time on October 25, 1992, although it had not previously been a named insured and had been sued on April 22, 1992, along with Barnes.
Peter Dortch is Barnes' brother-in-law who owned Dortch Agency, Inc. and is an independent insurance broker who placed the business coverage for Barnes with appellee. Barnes previously had procured personal insurance coverage through Dortch. Barnes relied upon Dortch's expertise to not only procure business coverage, but also to determine the amount of insurance and insurance company to write the coverage. Appellee's agency contract with Dortch created an independent contractor relationship between Dortch and the insurer, which agreement specifically included that Dortch "[p]rovide all usual and customary services of an insurance agent on all insurance contracts placed by the Agent with the Company."
Barnes told Dortch a few days after service of the suit that he and Southeastern Express Systems, Inc. had been sued in California by Triad. Barnes asked Dortch if they were covered by the policy for such suit, and Dortch told him that the policy did not provide coverage for Southeastern Express Systems, Inc. under the policy under the circumstances. Barnes testified that he accepted Dortch's opinion of non-coverage at face value and made no further effort to file a claim at that time. Later, after the defense costs had mounted to over a million dollars, Barnes decided to file a notice of claim in order to obtain payment of the defense costs from appellee. Then Barnes gave notice of the original and amended complaint to appellee on October 21, 1993, when he sent a claims letter to appellee but did not send a copy of the complaint or amended complaint.
On January 2, 1996, appellee moved for summary judgment. On April 30, 1996, the trial court granted appellee's motion for summary judgment based upon appellants' failure to provide notice and copy of the complaint as amended to the appellee of the suit as required by the contract. Appellants filed a timely appeal.
Appellants' sole enumeration of error is that the trial court erred as a matter of law in granting the motion for summary judgment.
"Independent insurance agents or brokers are generally considered the agent of the insured, not the insurer. Nat. Property, etc., Ins. Co. v. Wells, 166 Ga.App. 281(2), 304 S.E.2d 458 (1983)." European Bakers, Ltd. v. Holman, 177 Ga.App. 172, 173-174(2), 338 S.E.2d 702 (1985); see also Clark, Davis & Easley Ins. Agency v. Tile Technology, 217 Ga.App. 809, 459 S.E.2d 450 (1995); Kirby v. Northwestern Nat. Cas. Co., 213 Ga.App. 673, 678(2), 445 S.E.2d 791 (1994). Under the facts and circumstances of this case, including the familial relationship involved, Dortch, as an independent insurance agent or broker, was the agent of the insureds, appellants, so that notice to Dortch of the Triad suit was not notice to appellee.
When the terms of the policy or instructions stamped upon the face of a liability policy instruct the insured that it is to provide notice of suit, either to the independent insurance agent or the insurer, such delegation of apparent authority, notwithstanding the independent contractor relationship, will estop the insurer to deny any notice which was given to the independent agent under its instructions. This is because the insurer "places a purported agent in a position of apparent authority so that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has the authority to perform a particular act and deals with the agent upon that assumption. [Cits.]" Intl. Indem. Co. v. Odom, 174 Ga.App. 6, 7(2), 329 S.E.2d 307 (1985); see also Alexander Underwriters Gen. Agency v. Lovett, 177 Ga.App. 262, 265(2), 339 S.E.2d 368 (1985). However, in the case sub judice, neither the language of the policy nor anything stamped upon the face of the policy gave apparent authority to the independent insurance agent to receive the notice required to be given to the insurer, appellee. Therefore, any notice of the Triad suit given to Dortch, the independent insurance agent *436 who was acting as agent for appellants, did not provide constructive notice to appellee.
Titan Indem. Co. v. Hall County, 202 Ga. App. 38, 39-40(2), 413 S.E.2d 213 (1991), is distinguishable on both the law and facts from the case sub judice. In Titan, the facts involved only a "local insurance agent who had sold the policy," which description fails to distinguish an independent insurance agent from an agent employed by the insurer. Thus, the Titan opinion was properly grounded upon decisions wherein independent agents were designated under the stamp on the face of the policy with apparent authority to accept notice for the insurer. In the case sub judice, none of these factors is present; there cannot be constructive notice to the insurer from notice (if satisfactorily given) to an independent insurance agent who was the agent of the insured and who had no real or apparent authority to receive notice of a claim or suit on behalf of the insurer. Titan cannot be extended beyond the factual and legal basis upon which it was decided to create a rule of constructive notice to the insurer when notice is given to an independent agent without real or apparent authority to receive such notice on behalf of the insurer.
In a liability policy, notice and delivery of the suit papers to the insurer by either the insured or anyone else, in a timely and reasonable manner, will satisfy the condition precedent to liability under the contract. Timely notice and delivery of suit papers are critical to the contract because it bears upon the insured's risk and the insurer's ability to investigate, prepare to defend, or seek to reduce potential liability by settlement. "`The purpose of notice is to enable the insurer to inform itself promptly concerning the accident, so that it may investigate the circumstances, prepare for a defense, if necessary, or be advised whether it is prudent to settle any claim arising therefrom.' Public Nat. Ins. Co. v. Wheat, 100 Ga.App. 695, 698, 112 S.E.2d 194 (1959)." Kitt v. Shield Ins. Co., 240 Ga. 619, 621, 241 S.E.2d 824 (1978); see also Hamm v. Ledesma, 184 Ga.App. 237, 238, 361 S.E.2d 205 (1987). Appellants denied appellee such reasonable and timely notice and delivery of the complaint and amendments from April 22, 1992 until October 1993, in violation of the express terms of the insurance policy. A delay in providing notice of a claim for eight months was unreasonable as a matter of law; the delay in providing notice of an existing lawsuit and the failure to deliver the suit papers after service for nearly eighteen months was unreasonable as a matter of law absent a reasonable excuse for the delay. Richmond v. Ga. Farm Bureau Mut. Ins. Co., 140 Ga.App. 215, 231 S.E.2d 245 (1976).
By a delay in notice from the insured until long after suit has been served and the failure to deliver the suit papers, the insurer is deprived of the right to provide and to control the defense of the case, which entails the investigation of the claim, selection of counsel, theories of defense, conduct of discovery, and trial strategy, as well as the elimination of the risk of a default judgment if the insured does not hire private counsel to answer the complaint timely. If the insurer is to indemnify the insured within policy limits, then it must be afforded the opportunity to put up the best defense or to timely settle. Appellee's rights were clearly prejudiced by the lack of notice as a matter of law. However, "[c]ontrary to appellants' contentions, appellee was not required to show it was prejudiced by appellants' failure to give notice, as the notice requirement was a condition precedent under the policy. Richmond v. Ga. Farm Bureau, etc., Co., [supra at 222], 231 S.E.2d 245; Bituminous Cas. Corp. v. J.B. Forrest, 132 Ga.App. 714, 720(3), 209 S.E.2d 6 (1974); Wolverine Ins. Co. v. Sorrough, 122 Ga.App. 556, 562, 177 S.E.2d 819 (1970)." Bates v. Holyoke Mut. Ins. Co. in Salem, 171 Ga.App. 164, 165, 318 S.E.2d 777 (1984), aff'd, 253 Ga. 697, 324 S.E.2d 474 (1985).
Therefore, failure to provide timely and reasonable notice and to deliver the complaint and any amendments will act as a condition precedent to bar the insurer's liability under the policy except in certain cases of mandatory motor vehicle liability coverage, which do not apply here. Berryhill v. State Farm Fire, etc., Co., 174 Ga.App. 97, 98-99, 329 S.E.2d 189 (1985); Richmond v. Ga. Farm Bureau, etc., Co., supra at 222, 231 S.E.2d 245; Bituminous Cas. Corp. v. J.B. *437 Forrest, supra at 720, 209 S.E.2d 6. For example, Amica Mut. Ins. v. Bourgault, 263 Ga. 157, 160(2), 429 S.E.2d 908 (1993) is not controlling in the case sub judice, because that case involved a certified question from the United States Court of Appeals for the Eleventh Circuit as to the statutory interpretation of mandatory motor vehicle liability insurance when, under the express terms of the policy, the vehicle is principally used and garaged in another state. By the express language of the quote from Amica cited by appellants, Restatement, 2d, Conflict of Law, § 193 was applied only to motor vehicles by the Georgia Supreme Court. Neither the Restatement § 193 nor the Amica decision contradicts the Georgia conflict of law rule, lex loci contractus, where the contract was made and to be performed governs the applicable substantive law, which rule governs the case sub judice; there is evidence that the insurance contract was entered into in Georgia and was to be performed in Georgia by a Georgia business. There is no evidence that at the time that the contract of insurance was made that there was any indication that the principal activities of the insured would take place in California, and not in Georgia. See General Tel., etc., Southeast v. Trimm, 252 Ga. 95, 96, 311 S.E.2d 460 (1984); GEICO v. Dickey, 255 Ga. 661, 662, 340 S.E.2d 595 (1986); Ropar v. Travelers Ins. Co., 205 Ga. App. 249, 251-252(1), 422 S.E.2d 34 (1992). However, lex loci contractus is still the rule in Georgia. See General Tel., etc., Southeast v. Trimm, supra at 96, 311 S.E.2d 460; GEICO v. Dickey, supra at 662, 340 S.E.2d 595; Allstate Ins. Co. v. Duncan, 218 Ga.App. 552(1), 462 S.E.2d 638 (1995); Federal Ins. Co. v. Nat. Distrib. Co., 203 Ga.App. 763, 765-766, 417 S.E.2d 671 (1992).
The trial court did not err in granting summary judgment for the appellants' failure to provide timely and reasonable notice of suit.
Judgment affirmed.
BIRDSONG, P.J., and RUFFIN, J., concur.