A07A0791. KAY-LEX COMPANY v. ESSEX INSURANCE COMPANY et al.
A07A0792. SYSCO FOOD SERVICES OF ATLANTA, LLC v. ESSEX INSURANCE COMPANY et al.
(649 SE2d 602)

ADAMS, Judge.

Two insurance carriers filed a declaratory judgment action to determine their responsibilities in connection with a lawsuit arising out of a forklift accident. The trial court granted summary judgment in favor of the carriers. The two parties seeking coverage filed separate appeals. Those appeals have been consolidated for our review.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Construed in favor of the nonmovants, the facts are as follows: To keep him out of trouble during the summer and teach him responsibility, Greg Jones hired his tall and strong teenage stepson, Antonio Benson, to work as a laborer for Kay-Lex Company unloading trucks at a food service warehouse. These laborers were known as "lumpers," and Kay-Lex has purchased workers' compensation insurance for them since 1998. It is undisputed that Kay-Lex employed Benson during the summers of 2001 and 2002. And Jones, who was the "sole supervisor for Kay-Lex's operations" at the warehouse and who had authority to hire and fire laborers, brought Benson — then age 15 — back to work at the beginning of the summer of 2003. But that year, Jones's boss, Johnny Bunton — the sole proprietor of Kay-Lex, changed his mind about Benson; and when he saw Benson on the premises two or three times that summer, he expressly forbade Jones from employing Benson because he was too young. Nevertheless, Benson continued to come to work, and Jones concealed from Kay-Lex the compensation he paid to Benson for his work, part of which Jones paid in cash and part of which he paid by personally cashing a check improperly made out to a former employee. Unlike the earlier years, Benson did not receive a tax form showing compensation for 2003. In all other aspects, however, Benson functioned as a lumper or part-time lumper. At the time of the accident, he was wearing an orange Kay-Lex safety vest and in his pocket he had a purchase order, which tells what truck he had unloaded.

On June 19, 2003, Benson came to work with his stepfather as he had three or four days a week for two to three weeks that summer. He unloaded one or two trucks for Kay-Lex that morning. Jones did not allow Benson to operate a forklift; Jones testified, "He wasn't allowed on a forklift, except for that day." That day, Jones gave in to Benson's repeated requests to drive one; he explained, "I don't know why I agreed because I would not — before when he asked me, I would say no. So I don't know why." When asked if he anticipated Benson using a forklift later that summer as a part of his duties, Jones replied:

I really didn't. I didn't think about it like that. I just thought about him getting the knowledge of the forklift. And then maybe if he worked later again next year, he would have that under his belt. But that wasn't the training that he needed to do that. He was just familiarizing himself with the forklift.

Jones agreed to allow another Kay-Lex employee to oversee his stepson operating a stand-up forklift. Only about an hour later, while practicing moving and stacking empty pallets, Benson lost control of the forklift and accidentally backed it out of a loading dock door. He was killed when the forklift fell on him pinning him to the ground. On September 10, 2004, Benson's mother, Frieda Benson-Jones, filed a wrongful death action against Johnny L. Bunton, Jr., d/b/a Kay-Lex Company, and Sysco Food Services of Atlanta, LLC. Sysco owns the food service warehouse where the accident occurred, as well as the forklift.

At the time of the accident, Kay-Lex was insured pursuant to a commercial general liability policy issued by Essex Insurance Company and pursuant to an "Excess Third Party Liability Policy" issued by United National Insurance Company. In response to the lawsuit, Kay-Lex demanded that Essex defend it in the suit, and Essex agreed to do so subject to a reservation of rights. Sysco sought coverage under the Kay-Lex policy pursuant to its contractual relationship with Kay-Lex, and Essex issued a reservation of rights in that regard as well. United National also issued a reservation of rights.

Generally speaking, a commercial general liability policy covers certain business losses and "situations in which a business is liable to a third party for personal injury or property damage." Black's Law Dictionary (8th ed. 2004), "insurance policy." Following the general form, the Essex policy, which was in effect at all times relevant to this matter, excludes coverage for injuries to employees and relatives of employees of the insured that are connected to the employment or the employee's business duties:

> This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to:
>
> (1) any employee of [Kay-Lex] arising out of and in the course of employment or while performing duties related to the conduct of [Kay-Lex's] business; or
>
> (2) the spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).

The policy continues, "Wherever the word 'employee' appears . . . , it shall also mean any member, associate, leased worker, temporary worker or any person or persons loaned to or volunteering services to [Kay-Lex]." In its brief, Kay-Lex well summarizes the general operation of clause no. 1 as follows:

> The plain meaning of such language is that if you work for a company and you get hurt on the job, then this policy will not provide coverage, and you shall take the issue up with your employer's worker's compensation insurer.

United National's policy — an excess policy — includes a provision that states that its policy is subject to the same definitions, terms, conditions, exclusions and limitations as the Essex policy.

Essex and United National sought full summary judgment on three separate grounds: (1) Benson was an employee of Kay-Lex as defined in the policies and his injuries arose out of and in the course of his employment or while he was performing duties related to Kay-Lex's business; (2) Benson was a child or relative of Kay-Lex employee Greg Jones, and Benson's injuries arose out of and in the course of Jones's employment or while performing duties related to the conduct of Kay-Lex's business; and (3) Kay-Lex failed to provide notice of the incident "as soon as practicable" as required by the policy. The trial court granted summary judgment in favor of the insurers without indicating the basis for its decision.

"In Georgia, the insurer bears the burden of showing that a fact situation falls within an exclusionary clause of an insurance policy. And when construction of a policy is required, exclusions must be construed against the insurer and in favor of the insured." (Citations omitted.) *Connell v. Guarantee Trust Life Ins. Co.*, 246 Ga. App. 467, 470 (1) (541 SE2d 403) (2000). "Where an insurance contract provision is clear and unambiguous, its interpretation is a matter for the court. [Cits.]" *Southern v. Sphere-Drake Ins. Co.*, 226 Ga. App. 450, 451 (486 SE2d 674) (1997)."[I]f the policy exclusions are unambiguous they must be given effect even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended." (Punctuation and footnote omitted.) *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 372 (599 SE2d 220) (2004).

1. (a) Kay-Lex and Sysco contend the trial court erred because there is, at a minimum, an issue of fact as to whether the insurers received timely notice of an occurrence under the two policies. When Bunton was asked what notice he — on behalf of Kay-Lex — gave to Essex that Benson had been in an accident, Bunton replied, "I notified Ray Griffin, *my insurance agent*[,] the day of the accident." (Emphasis supplied.) All that he recalled saying was that there had been an accident, that Benson was injured, and that he was on the way to the hospital. He specifically denied personally notifying either Essex or United National of the accident. In the conversation with Griffin, Griffin said, not replying to anything in particular, that he "would take care of it. Don't worry about it. Go be with the family. . . ."

The accident occurred on June 19, 2003. The first notice Essex and United National received of the accident was on June 18, 2004 in the form of a demand letter from Benson-Jones's attorney in the underlying suit, one year after the accident.

Absent some justification, failure to provide timely notice of an occurrence can defeat coverage under such a policy:

> It is well established that a notice provision expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification. Where an insured has not demonstrated justification for failure to give notice according to the terms of the policy, . . . then the insurer is not obligated to provide either a defense or coverage.

(Citations and footnote omitted.) *Federated Mut. Ins. Co. v. Ownbey Enterprises*, 278 Ga. App. 1, 3 (627 SE2d 917) (2006).

The pertinent notice provision in the Essex policy provides that Kay-Lex "must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." "We" is defined to mean "the company providing this insurance," i.e., Essex. The policy specifically states that in the event of a lawsuit against Essex, service may be made on Essex's president or his nominee at a specified address.

The applicable provision of the United National policy is:

> You must see to it that we are, or *our* authorized representative is, notified as soon as practicable of an occurrence, offense or event which may result in a claim. An insured must notify us or one of *our* authorized agents promptly of an occurrence, offense or event which may result in a claim.

(Emphasis supplied.) "We" is defined to be United National. The United National policy does not define "authorized representative" although it does show on the face of the policy the "Producer's Name & Address" as Southern Insurance Underwriters, Inc. The United National policy has an endorsement indicating that copies of any process, suit, complaint or summons should be sent by certified or registered mail to the general counsel at a specified address.

Kay-Lex and Sysco argue that Kay-Lex's notice to its agent Griffin, together with Griffin's statement that he "would take care of it" creates an issue of fact as to whether the insurers received timely notice of the accident. The only other fact they offer in support of this argument is that on two of the numerous endorsements to each policy the name "Griffin Insurance Agency" is shown. In the case of the Essex policy, the word "Agent:" is found next to the name.

But there are several factual and legal flaws to this argument. Starting with the facts, the Essex policy requires notification to Essex; it does not provide for notice to any agent. Thus, with regard to Essex, it is irrelevant that the phrase "Agent: Griffin Insurance Agency" is found on two endorsements. Second, Bunton admitted that Griffin was his agent, and Kay-Lex does not dispute this fact. There is nothing in either policy, ambiguous or not, to suggest that Bunton could notify *his own agent* rather than the carrier or, in the case of United National, *its* agent. Third, Bunton did not testify that he looked at the policy endorsements, saw the Griffin Insurance Agency name, and concluded that he should give notice to Griffin. Rather, as he testified, he simply called *his* agent. Fourth, the only direct evidence regarding Griffin's relationship with the insurers shows that neither he nor his agency were agents of the insurers. Rather, Griffin was an independent agent who procured the coverage through a surplus lines broker, namely Southern Insurance Underwriters, Inc. In short, it is undisputed that Bunton contacted his own independent agent and that he did not notify Essex or United National or any agent of theirs.

The argument is also legally flawed. "Independent insurance agents or brokers are generally considered the agent of the insured, not the insurer." (Citations and punctuation omitted.) *Southeastern Express Systems v. Southern Guaranty Ins. Co. of Ga.*, 224 Ga. App. 697, 700 (482 SE2d 433) (1997). It is true that an insurance company could place a purported agent in a position of apparent authority such that one might be justified in assuming that the agent had authority to receive notice of an occurrence or claim. Id. But, like in *Southeastern*, in this case there is no such apparent authority because "neither the language of the policy nor anything stamped upon the face of the policy gave apparent authority to the independent insurance agent to receive the notice required to be given to the insurer." Id. Although the name Griffin Insurance Agency appears on two endorsements in each policy, it does not appear on the face of either policy.[1] In fact, the name of both insurers' true agent — Southern Insurance Underwriters, Inc. — does.

---

[1] Endorsements are not considered a part of the "face of the policy." See, e.g., *Inabinet v. State Farm &c. Ins. Co.*, 124 Ga. App. 514 (1) (184 SE2d 514) (1971) ("face of policy" said to "refer" to endorsement); *Lumbermen's Underwriting Alliance v. Jessup*, 100 Ga. App. 518, 543-544 (112 SE2d 337) (1959) (face of the policy different from endorsement); *Spurlin v. Western Cas. &c. Co.*, 65 Ga. App. 488 (16 SE2d 48) (1941) (endorsement becomes "part of" policy by being referred to on face of the policy). See also *Veal v. Security Mut. Life Ins. Co.*, 6 Ga. App. 721 (65 SE 714) (1909) (face of the policy distinguished from pages that followed).

Furthermore, in order for the doctrine of apparent agency to apply, the claimant must also show justiciable reliance on the representation of agency. *Kirby v. Northwestern Nat. Cas. Co.*, 213 Ga. App. 673, 678 (2) (445 SE2d 791) (1994). Here, there is no evidence that Bunton relied on the endorsements of either policy to conclude that the Griffin Insurance Agency was the agent of the carriers. There is no evidence that he looked through the policies, saw the name of his own agent on two of the endorsements, concluded that his own agent must also be an agent of the insurers, and therefore gave Griffin a call.

Finally, without an actual or apparent agency relationship between Griffin and the carriers, Bunton was not authorized to rely on any statements Griffin made to him in his initial call. *Kinard v. Nat. Indem. Co.*, 225 Ga. App. 176, 178 (1) (483 SE2d 664) (1997), aff'd, *Ross v. Stephens*, 269 Ga. 266 (496 SE2d 705) (1998). Accordingly, as a matter of law, Kay-Lex failed to give notice of an occurrence to either insurer and has shown no justification for failing to do so.[2]

In this case, notice did not occur until 12 months after the accident. "An unexcused significant delay in notifying an insurer about an incident or lawsuit, . . . may be unreasonable as a matter of law. [Cits.]" *Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316 (1) (562 SE2d 267) (2002). In that case, this Court held that an unexcused delay of 11 to 12 months was unreasonable as a matter of law. Id. See also *Southeastern Express Systems*, 224 Ga. App. at 701 (failure to give notice for eight months was not "as soon as practicable" as a matter of law, and insurer did not have to show prejudice); *Snow v. Atlanta Intl. Ins. Co.*, 182 Ga. App. 1, 2 (354 SE2d 644) (1987) (insurer entitled to summary judgment where it was not notified for ten months after the accident and six months after suit was filed). Accordingly, the one-year delay in notice to the insurers in this case was unreasonable as a matter of law, and therefore summary judgment was proper on this ground.

---

[2] The cases upon which Kay-Lex and Sysco rely are not controlling. The case of *Federated Mut. Ins. Co.*, 278 Ga. App. 1, distinguishes itself from application to this case. That case dealt with an ambiguity in the language of the provision for notice of suit or claim, and it specifically distinguished the language of the provision for notice of an occurrence, which is at issue here. And *Titan Indem. Co. v. Hall County*, 202 Ga. App. 38, 39-40 (2) (413 SE2d 213) (1991), has already been limited to its facts and cannot be construed "to create a rule of constructive notice to the insurer when notice is given to an independent agent without real or apparent authority to receive such notice on behalf of the insurer." *Southeastern Express Systems*, 224 Ga. App. at 701. See also *Intl. Indem. Co. v. Odom*, 174 Ga. App. 6 (329 SE2d 307) (1985) (notice to independent agent sufficient where policy stated that notice could be given to "your agent"). The case of *Protective Ins. Co. v. Johnson*, 256 Ga. 713 (352 SE2d 760) (1987), does not address the law regarding independent agents.

(b) Kay-Lex and Sysco contend the insurers failed to preserve the late-notice argument for denying coverage by failing to assert it in a timely manner.

In its reservation-of-rights letter, Essex wrote that the defense would be "undertaken with a full reservation of rights . . . to deny coverage for the reasons more fully explained below." Then after itemizing the employee and relative exclusions as reasons for its reservation of rights, Essex wrote, "Any investigation or defense efforts undertaken by Essex Insurance Company with respect to [the underlying suit] shall not waive or otherwise compromise the right of Essex Insurance Company to, at any time, contest coverage and/or deny coverage for the incident. . . ." Essex added:

> Further investigation and discovery . . . may reveal other reasons why the coverage afforded by the Policy does not apply to any liability of Kay-Lex company for the forklift accident . . . and Essex Insurance Company hereby reserves its right to assert such other reasons and grounds for non-coverage as they may become known in the future.

Neither Kay-Lex nor Sysco ever objected to a defense based on a reservation of rights.

Kay-Lex contends that because Essex did not specify the late notice argument in its letter, it has waived and is estopped from asserting this ground for noncoverage.[3] This contention is controlled adversely to Kay-Lex by *Govt. Employees Ins. Co. v. Progressive Cas. Ins. Co.*, 275 Ga. App. 872, 876 (3) (622 SE2d 92) (2005). That case held that an insurance company is not required to "list each and every basis for contesting coverage in the reservation-of-rights letter before the company [can] raise such in the declaratory judgment action." Id. See also *North Metro Directories Publishing v. Cotton States Mut. Ins. Co.*, 279 Ga. App. 492, 496 (2) (631 SE2d 726) (2006). Furthermore, "[b]y not objecting to the reservation of rights letter and by permitting [Essex] to go forward with its defense of the suit, [Kay-Lex] is deemed to have consented to the letter's terms. [Cit.]" *Jacore Systems v. Central Mut. Ins. Co.*, 194 Ga. App. 512, 513-514 (1) (a) (390 SE2d 876) (1990). In the letter, Essex stated that it was not waiving any rights to contest or deny coverage. Kay-Lex's related assertion that Essex failed to timely file the declaratory judgment action is controlled adversely to it by *Jacore*. Id. at 514 (1) (b) (where insured does not object to defense based on a reservation of rights, insurer not required to file a declaratory judgment action to avoid waiver and estoppel).

---

[3] United National did specify this ground for noncoverage in its reservation of rights.

2. Sysco also contends the trial court erred by finding that the insurers had standing to pursue their declaratory judgment action because they never obtained certificates of authority from the Secretary of State in accordance with OCGA § 14-2-1501. That Code section requires foreign corporations to obtain such a certificate before transacting business here. And the next section provides that, without such a certificate, a foreign corporation transacting business in this state "may not maintain a proceeding in any court in this state until it obtains a certificate of authority." OCGA § 14-2-1502 (a).

But there are 14 enumerated exceptions provided in the Code as to what constitutes transacting business within the State. See OCGA § 14-2-1501 (b). And the Code expressly provides that the list is not exhaustive. OCGA § 14-2-1501 (c). We find such an exception here.

First, OCGA § 33-3-2 (b) provides that litigation in connection with the adjustment of any claim arising under an insurance contract "shall not be deemed to constitute the transacting of insurance in this state." Second, both Essex and United National are surplus lines carriers, which are specifically regulated by Chapter 5 of Title 33 of the Georgia Code — "Regulation of Unauthorized Insurers." See OCGA § 33-5-1 et seq. That chapter specifically authorizes the procurement of surplus line insurance from insurers who have not been authorized to sell insurance in Georgia, as long as, among other things, it is procured through a licensed surplus line broker. OCGA § 33-5-21. As long as that and other requirements of Chapter 5 are met, such insurance "shall be fully valid and enforceable as to all parties and shall be given recognition in all matters and respects to the same effect as like contracts issued by authorized insurers." OCGA § 33-5-30.

We find that these Code sections and the remainder of Article 2 of Chapter 5 of Title 33 make clear that even without a certificate of authority from the Secretary of State, those who provide surplus line insurance in Georgia may maintain a proceeding in this State in connection with the adjustment of claims arising under that insurance.

In summary, the insurers were authorized to file a declaratory judgment action, they preserved their right to raise untimely notice of an occurrence as a defense to coverage, and the trial court's grant of summary judgment is correct on that ground. We therefore need not consider whether summary judgment was also proper based on the employee/relative exclusion of the policy.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 10, 2007.

*Kevin J. Bahr*, for appellant (case no. A07A0791).

*Shapiro, Fussell, Wedge & Martin, Robert B. Wedge, Jason A. Cooper*, for appellant (case no. A07A0792).

*Alston & Bird, Gerald L. Mize, Jr., Stephen L. Bracy, Carlock, Copeland, Semler & Stair, Frederick M. Valz III, Ambadas B. Joshi, Cochran, Cherry, Givens, Smith & Sistrunk, Hezekiah Sistrunk, Jr., Kenneth R. Lester*, for appellees.