## A08A0353. LEE, BLACK, HART & ROUSE, P.C. v. THE TRAVELERS INDEMNITY COMPANY.

(662 SE2d 889)

RUFFIN, Presiding Judge.

After an employee of Lee, Black, Hart & Rouse, P.C. (the "firm"), allegedly stole money from the law firm's escrow account, the firm recovered a portion of the loss from The Travelers Indemnity Company ("Travelers"), which provided insurance coverage for losses caused by "employee dishonesty." The firm sued Travelers, seeking to recover additional payment. The parties filed cross-motions for summary judgment, and the trial court granted Travelers' motion and denied the firm's motion. The firm appeals. Finding no error, we affirm.

A trial court properly grants summary judgment when there is no genuine issue of material fact and the moving party has shown entitlement to judgment as a matter of law.[1] In reviewing the trial court's grant or denial of a motion for summary judgment, we conduct a de novo review of the law and the evidence.[2]

Viewed in this manner, the evidence shows that the firm, which specialized in real estate closings, purchased a commercial insurance policy from Travelers that provided coverage for, among other things, "employee dishonesty."[3] The policy, which was in effect from July 14, 2003 through July 14, 2004, would pay up to $250,000 for losses, including those resulting from employee dishonesty. In January 2004, the firm discovered that Sharon Hendricks, an employee with the firm, had stolen approximately $350,000 to $400,000 from its escrow account from 1998 through 2004. In a check kiting scheme that the president of the firm described as "staggeringly complex," Hendricks would shuffle money among three files, creating an artificial float and siphoning off funds.

The majority of forged checks written by Hendricks were for sums ranging from less than twenty dollars to a few thousand dollars. On January 5, 2004, however, Hendricks wrote two substantial checks, payable to "John Vigdoff," totaling $91,790.96.[4] The

---

[1] See OCGA § 9-11-56 (c); *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371 (599 SE2d 220) (2004).

[2] See id.

[3] We note, as a threshold matter, that the firm's brief fails to fully comply with Court of Appeals Rule 25 (a) (1), which requires that the material facts relevant to the appeal be supported by citation to the record. Many of the firm's factual allegations are wholly unsupported, and many of the citations that are provided are inaccurate. The firm's failure in this regard has greatly hampered our review. See *In re Earle*, 248 Ga. App. 355, n. 1 (545 SE2d 405) (2001).

[4] The president of the firm testified that he had no knowledge of any individual named Vigdoff.

checks were allegedly endorsed by Vigdoff and were deposited in the firm's escrow account on January 6, 2004. Hendricks also allegedly forged $51,751.93 in checks for "attorney fees," payable to the firm, which she then deposited in the firm's account.

In August 2004, the firm submitted a proof of loss claim form to Travelers, claiming a net loss of $325,885.64. After investigating the claim, Travelers paid the firm $151,500.84. Travelers refused to pay for the Vigdoff and attorney fee checks, however, asserting that those checks did not constitute a loss under the policy as the funds were deposited back into the firm's account. After the firm filed suit to recoup these funds from Travelers, the trial court granted the insurance company's motion for summary judgment. The trial court noted that the crux of the dispute was whether Travelers should be required to cover the losses from the Vigdoff checks and the attorney fee checks that Hendricks forged, but then deposited in the firm account. In its order, the court found that "these were not losses during the coverage period for which [Travelers] is contractually liable. Put simply, these are not funds that came out of [the firm's] pocket for which [Travelers] should pay." We find no error in this ruling.

"In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms."[5] "As with any contract, the terms of an insurance policy bear their usual and common meanings."[6] And "[w]here an insurance contract provision is clear and unambiguous, its interpretation is a matter for the court."[7] The policy at issue provides, in pertinent part, that Travelers would pay for losses resulting from employee dishonesty, which was defined as follows:

"Employee Dishonesty" means only dishonest acts, committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

a. Cause you to sustain loss; and also

b. Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

---

[5] (Punctuation omitted.) *Cincinnati Ins. Co. v. Magnolia Estates*, 286 Ga. App. 183, 185 (648 SE2d 498) (2007).

[6] *Sherman & Hemstreet, Inc. v. Cincinnati Ins. Co.*, 277 Ga. 734, 737 (3) (594 SE2d 648) (2004).

[7] (Punctuation omitted.) *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484, 487 (649 SE2d 602) (2007).

(1) The "employee", or

(2) Any person or organization intended by the "employee" to receive that benefit.

Thus, by its plain terms, the policy states that it will pay for a *loss* that results from employee dishonesty, which requires, in part, that the employee intend to obtain a financial benefit either for herself or an intended recipient. Here, because Hendricks deposited those checks back into the firm's account, the trial court correctly found that no loss was sustained. Furthermore, it does not appear that these transactions resulted in a financial benefit to Hendricks. It follows that this argument presents no basis for reversal.[8]

In an argument that the trial court described as "ingenuous," the firm contends that Hendricks' depositing of the forged checks into the firm's account constituted payment of her "debt" to the firm, which the firm was authorized to apply to funds stolen before the insurance policy took effect. Specifically, the firm contends that, under OCGA § 13-4-42, which involves contract principles, it as a "creditor" can apply Hendricks' "payments" to her oldest debts. However, the firm provides no citation of authority — and we are aware of none — that treats the victim of a crime as a creditor for purposes of the payment rule established by OCGA § 13-4-42. Moreover, there is not a scintilla of evidence that Hendricks intended the attorney fee and Vigdoff checks to be repayment. Rather, it appears that the depositing of these checks was simply part of her check kiting scheme. Under these circumstances, the trial court did not err in granting summary judgment in favor of Travelers and in denying the firm's motion.

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED JUNE 5, 2008

*Lee, Black, Hart & Rouse, Christopher L. Rouse*, for appellant.
*Weiner, Shearouse, Weitz, Greenberg & Shawe, Malcolm Mackenzie III, Anthony R. Casella*, for appellee.

---

[8] See *Sherman & Hemstreet*, supra.