[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-13745
Non-Argument Calendar

————————————————

D.C. Docket No. 4:19-cv-00045-RSB-CLR


HAL JENKINS,
Individually and as Administrator of the Estate of April Jenkins,

Plaintiff-Counter Defendant-
Appellant,


versus


CLJ HEALTHCARE, LLC,
d.b.a. Opulence Aesthetic Medicine,

Counter Defendant-Appellee,

OWNERS INSURANCE COMPANY,

Defendant-Counter Claimant-
Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(August 18, 2021)

Before JORDAN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Hal Jenkins appeals the district court's summary judgment for Owners Insurance Company in this garnishment action. Jenkins argues that the district court erred by concluding that there was no genuine dispute that the insured, CLJ Healthcare, LLC, didn't give notice of the death of one of its liposuction patients, and the medical malpractice lawsuit against the company, as required under the insurance policy. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 19, 2013, Dr. Nedra Dodds performed liposuction surgery on April Jenkins, Hal Jenkins's daughter, at CLJ Healthcare's medical center. During the operation, April "suddenly went rigid" and exhibited symptoms consistent with a seizure. Dr. Dodds was unable to give April atropine to address this emergency because the medical "crash cart" wasn't properly stocked, and the employee Dr. Dodds instructed to call 911 took twenty-nine minutes to place the call. April was transported to the hospital where, tragically, attempts to resuscitate her failed

2

and she was pronounced dead.  The medical examiner concluded that April died of "natural" causes "as a result of . . . pulmonary fat emboli," which "are a known complication of liposuction" procedures.

At the time of April's death, CLJ Healthcare held an insurance policy from Owners Insurance that it had obtained through D. Ward Insurance Services, Inc., an independent insurance agency.  The cover letter from Owners Insurance to CLJ Healthcare included the following statement:  "Feel free to contact your independent [insurance] agent with questions you may have about any of your insurance needs."  The policy also included a notice provision providing that CLJ Healthcare "must see to it that [Owners Insurance is] notified promptly of an 'occurrence' that may result in a claim"; in the event of a claim or lawsuit, the insured "must see to it that [Owners Insurance] receive[s] prompt written notice of the claim or 'suit'"; and "[n]o one may bring a legal action against [Owners Insurance] under this insurance unless [t]here has been full compliance with all of the terms of this insurance."

John Marshall, CLJ Healthcare's office manager, called the independent agent and told him about April's death in "late February of 2013," "several weeks" after it happened.  The independent agent told Marshall that the Owners Insurance policy didn't provide insurance for medical malpractice claims.

In August 2013, Hal Jenkins sued CLJ Healthcare and Dr. Dodds for the wrongful death of his daughter.  Jenkins alleged that Dr. Dodds was professionally

3

negligent in piercing his daughter's liver during the surgery, operating without nurses in the room, and not calling 911 sooner. Dr. Dodds told her attorney that she had an insurance policy through Owners Insurance, but there is no record of her counsel contacting Owners Insurance about the claim and lawsuit until April 2014, when her counsel forwarded Jenkins's demand letter to D. Ward, the independent insurance agency, who in turn forwarded it to Owners Insurance.

In September 2014, Owners Insurance sent CLJ Healthcare a letter stating that the insurance policy didn't provide coverage for any claims related to the incident because CLJ Healthcare had failed to provide Owners Insurance with timely notice of April's death or the lawsuit. Owners Insurance also told CLJ Healthcare that the policy didn't cover claims for bodily injury "due to [the] rendering or failure to render any professional service, including medical services."

In November 2014, Jenkins filed an amended complaint in his lawsuit against CLJ Healthcare, adding a claim for "non-professional negligence" because of the delay in calling 911. Counsel for Jenkins sent a copy of this amended complaint to Owners Insurance in June 2015. Owners Insurance replied with a letter reiterating that the policy didn't provide coverage for Jenkins's claim.

Jenkins eventually obtained a default judgment in Georgia state court against CLJ Healthcare for $60,000,000. To collect on the judgment, Jenkins filed a garnishment action against Owners Insurance in state court, which Owners

Insurance removed to federal court.  Owners Insurance then moved for summary judgment, arguing that its policy didn't afford coverage to the claim because CLJ Healthcare had failed to promptly provide notice of April's death and the lawsuit. Owners Insurance also argued that its policy with CLJ Healthcare excluded from coverage any claim for bodily injury due to the rendering or failure to render a professional service.

The district court granted summary judgment for Owners Insurance.  The district court concluded that CLJ Healthcare had failed to the comply with the policy's notice provision and Owners Insurance was therefore "not obligated to pay under the policy."  "Under Georgia law," the district court explained, "[i]ndependent insurance agents" like D. Ward "are generally considered the agent of the insured, not the insurer."  The district court reasoned that because D. Ward was CLJ Healthcare's agent rather than Owners Insurance's, the policy's notification provision wasn't satisfied when CLJ Healthcare told D. Ward about April's death in February 2013.  Thus, the district court concluded that Owners Insurance wasn't notified of April's death until April 2014, which was "more than a year after [her] death and eight months after [Jenkins] filed his wrongful death action, even though the policy required 'prompt' notice of each event."  The district court concluded that this delay was unreasonable and unexcused, entitling Owners Insurance to summary judgment.  The district court also concluded that Jenkins's garnishment action failed

5

because the Owners Insurance policy excluded from coverage any claim for bodily injury due to the rendering or failure to render a professional service.

Jenkins appeals from the district court's summary judgment for Owners Insurance.[1]

## STANDARD OF REVIEW

"An insurance policy is a contract and therefore interpretation of the language in such a policy constitutes a ruling on a question of law, which is . . . subject to de novo review." EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am., 845 F.3d 1099, 1105 (11th Cir. 2017). Summary judgment is proper if, with all reasonable inferences made in favor of the opposing party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] We issued a jurisdictional question to the parties, asking whether this lawsuit is a "direct action against the insurer," and if it was, whether Owners Insurance would be deemed to be a citizen of every state in which the insured, CLJ Healthcare, is a citizen. See 28 U.S.C. § 1332(c)(1) ("[I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of . . . every State and foreign state of which the insured is a citizen . . . ."). The parties both agree that this lawsuit is not a direct action against the insurer because Jenkins had to first obtain a judgment in state court against CLJ Healthcare before proceeding with this garnishment action against Owners Insurance. We agree. Under Georgia law, a garnishment action requires the plaintiff to first obtain a "money judgment" in Georgia state court. See O.C.G.A. § 18-4-2(b). Jenkins couldn't have "skip[ped] suing [CLJ Healthcare] and sue[d] directly [its] insurance carrier." Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1300–01 (11th Cir. 2014) (citation and quotation marks omitted). Because this case isn't a direct action against Owners Insurance, we conclude that CLJ Healthcare's Georgia citizenship doesn't defeat diversity jurisdiction. See id. at 1300 (explaining that "courts have uniformly defined the term direct action to refer to those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him." (citation and quotation marks omitted)).

matter of law." See Pennington v. City of Huntsville, 261 F.3d 1262, 1265 (11th Cir. 2001); Fed. R. Civ. P. 56(a).

## DISCUSSION

Jenkins argues that the district court erred in granting summary judgment for Owners Insurance because CLJ Healthcare gave prompt notice of April's death and the lawsuit. Jenkins also argues that, even if it didn't give prompt notice of April's death and the lawsuit, CLJ Healthcare was justified in giving late notice. We reject both arguments.

"In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." Old Republic Union Ins. Co. v. Floyd Beasley & Sons, Inc., 551 S.E.2d 388, 390 (Ga. Ct. App. 2001) (cleaned up). When an insurance policy requires as a coverage condition that the insured provide the insurer with notice of a probable claim and a lawsuit, "no action will lie against the insurer unless the insured has fully complied with the terms" of the notice provision. See Progressive Mountain Ins. Co. v. Bishop, 790 S.E.2d 91, 122 (Ga. Ct. App. 2016). "[T]he issue of whether notice is timely and meets the policy provisions is usually a question of fact for the jury. Unexcused significant delay, however, may be unreasonable as a matter of law." Advocate Networks, LLC v. Hartford Fire Ins. Co., 674 S.E.2d 617, 619 (Ga. Ct. App. 2009) (cleaned up).

7

Jenkins doesn't dispute that the notice provision in the insurance policy was a condition precedent to coverage. He instead argues that CLJ Healthcare satisfied the policy's notice requirement on three different occasions.

First, Jenkins argues that Owners Insurance received timely notice of April's death in February 2013 when CLJ Healthcare's office manager told the independent agent about it. Under Georgia law, "[i]ndependent insurance agents or brokers are generally considered the agent of the insured, not the insurer." European Bakers, Ltd. v. Holman, 338 S.E.2d 702, 704 (Ga. Ct. App. 1985). But an insurer can place an independent insurance agent "in a position of apparent authority such that one might be justified in assuming that the agent had authority to receive notice of an occurrence or claim." Kay-Lex Co. v. Essex Ins. Co., 649 S.E.2d 602, 607 (Ga. Ct. App. 2007). Jenkins argues that Owners Insurance put D. Ward in a position of apparent authority.

We disagree. "[N]either the language of the policy nor anything stamped upon the face of the policy gave apparent authority to [D. Ward] to receive the notice required to be given to [Owners Insurance]." See id. (quotation omitted). The policy provided that "[y]ou must see to it that we are notified promptly of an 'occurrence' that may result in a claim." The policy also provided that "[i]f a claim is made or 'suit' is brought against any insured, you must see to it that we receive prompt written notice of the claim or 'suit.'" Elsewhere, the policy defined "you" to refer

8

to the insured—CLJ Healthcare—and defined "we" to refer to "the [c]ompany providing this insurance"—Owners Insurance. Thus, the policy expressly required CLJ Healthcare to give notice directly to Owners Insurance. Nothing in the policy authorized CLJ Healthcare to give notice to Owners Insurance through D. Ward or any other third party.

Jenkins argues that a question of fact existed as to apparent agency because Owners Insurance's cover letter to the policy told CLJ Healthcare "to contact [its] independent [insurance] agent"—D. Ward—"with questions [it] may have about any of [its] insurance needs." But Owners Insurance inviting CLJ Healthcare to run questions about its "insurance needs" by D. Ward didn't change the plain language of the policy requiring that notice of a claim go to Owners Insurance. Critically, the cover letter was clear that D. Ward was CLJ Healthcare's agent rather than Owners Insurance's. Thus, Jenkins failed to create a genuine issue of fact that D. Ward was "in a position of apparent authority such that [CLJ Healthcare] might be justified in assuming that [D. Ward] had authority to receive notice of an occurrence or claim." See id.

Second, Jenkins argues that Owners Insurance received notice of the lawsuit in March 2014 when D. Ward forwarded the policy to CLJ Healthcare's office manager. This was sufficient proof of notice to clear the summary judgment hurdle, Jenkins maintains, because it created "a jury inference that [CLJ Healthcare's office

9

manager] requested the policy from Owners Insurance because the suit had been filed." But valid notice under the policy required CLJ Healthcare to "[i]mmediately send" Owners Insurance copies of all legal papers related to the suit. CLJ Healthcare receiving a copy of the insurance policy from its independent insurance agent says nothing about whether Owners Insurance received prompt notice of the lawsuit as required by the policy. No reasonable jury could infer that CLJ Healthcare provided notice of the lawsuit to Owners Insurance—along with copies of all legal papers related to the lawsuit—just because D. Ward sent CLJ Healthcare a copy of the policy. That's just speculation, and "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted).

Even if we could infer that Owners Insurance had notice in March 2014, as a matter of Georgia law that wasn't prompt notice. Jenkins sued in August 2013, and a delay of seven months is untimely notice of a lawsuit as a matter of law. See Advocate Networks, 674 S.E.2d at 619 (holding that four-month delay in giving notice of a lawsuit was unreasonable as a matter of law); Caldwell v. State Farm Fire & Cas. Ins. Co., 385 S.E.2d 97, 99–100 (Ga. Ct. App. 1989) (affirming summary judgment where notice was given six months after the incident); Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc., 209 S.E.2d 6, 8–9 (Ga. Ct. App. 1974) (holding

10

that four-month delay in providing notice of an occurrence was not prompt notice as a matter of law).

And third, Jenkins argues that Owners Insurance received notice of the lawsuit in June 2015 when Jenkins's counsel sent it an amended copy of the complaint against CLJ Healthcare. Relying on Lumbermens Mutual Casualty Co. v. Plantation Pipeline Co., 447 S.E.2d 89 (Ga. Ct. App. 1994), Jenkins argues that this was timely notice because the Owners Insurance policy was an excess policy which impacts "the reasonableness and timeliness of the notice." But the policy's notice provision required the insured—CLJ Healthcare—to provide Owners Insurance with written notice of suit. The notice provision wasn't satisfied by correspondence from Jenkins, the party suing the insured. See Hays v. Ga. Farm Bureau Mut. Ins. Co., 722 S.E.2d 923, 925 (Ga. Ct. App. 2012) (explaining that, under Georgia law, parties to an insurance policy are bound by its plain and unambiguous terms).

Even if notice from Jenkins could satisfy the notice requirement, the policy language doesn't excuse delaying prompt notice until the insurance policy was triggered. Consider Lumbermens, the case that Jenkins relies on. The plaintiff in that case had an excess insurance policy with the defendant insurer along with two additional policies with two other insurance companies. Id. at 90. The Lumbermens excess policy provided that "[w]henever it appears that an occurrence is likely to involve indemnity under this policy, written notice thereof shall be given to the

11

company or any of its authorized agents as soon as practicable." Id. at 90–91 (emphasis added). One of the insured's pipelines leaked in 1975 but the excess insurer wasn't notified until 1990. Id. at 90. The excess insurer argued that because it should have received notice "as soon as the leak was discovered," the plaintiff's claim was untimely. Id. at 91. The Lumbermens court affirmed the summary judgment for the plaintiff because "no basis existed for finding that the [excess] policy would become 'involved'" until 1990. Id. The state appellate court distinguished cases (like ours) involving personal injury policies "that required notice to the insurer as soon as practicable after an event," because those cases didn't "involve[] an excess policy" where "the notice obligation [was] triggered by the insured's assessment" that the amount of property damage it may be liable for exceeded the "ceiling" of the primary insurance policy. Id.

Unlike the Lumbermens policy, the notice provision in the Owners Insurance policy wasn't triggered by CLJ Healthcare's belief that its liability in an incident would exceed its coverage from its other insurance policies. Rather, CLJ Healthcare was required to "promptly" provide notice to Owners Insurance "in the event of [an] occurrence" or if "a claim was made or 'suit' [was] brought" against the insured. Because the Owners Insurance policy "required notice to the insurer as soon as practicable after an event," Lumbermens doesn't support Jenkins's claim that CLJ

12

Healthcare timely provided notice of April's death and the lawsuit to Owners Insurance. See id.

As a fallback argument, Jenkins argues that CLJ Healthcare was justified in providing late notice of April's death and the lawsuit to Owners Insurance. Late notice was justified, Jenkins argues, because: (1) the independent agent told CLJ Healthcare that the policy didn't provide coverage for medical malpractice claims; (2) there was no evidence that the independent agent explained to CLJ Healthcare that it was required to give notice directly to Owners Insurance or that the policy covered simple negligence; and (3) CLJ Healthcare's attorneys didn't explain to it that the policy could provide coverage for Jenkins's claim.

None of Jenkins's reasons are valid grounds for late notice. The law "requires more than just ignorance, or even misplaced confidence, to avoid the terms of a valid contract." Allstate Ins. Co. v. Walker, 562 S.E.2d 267, 268 (Ga. Ct. App. 2002) (quoting Protective Ins. Co. v. Johnson, 352 S.E.2d 760, 761 (Ga. 1987)). Thus, CLJ Healthcare's "ignorance of the terms of a valid insurance contract" doesn't justify late notice. See Townsend v. Nat'l Union Fire Ins. Co., 397 S.E.2d 61, 62–63 (Ga. Ct. App. 1990) (holding that late notice was "inexcusable" where the insured "was not aware he might be entitled to the no-fault benefits"). And, the failure of its agents to give accurate advice about whether the policy might provide coverage also doesn't excuse the untimely notice. See Silva v. Liberty Mut. Fire. Ins. Co., 808

13

S.E.2d 886, 889 (Ga. Ct. App. 2017) (holding that late notice was unjustified where the insured's "only excuse for her delay in notifying [the insurer] was that her counsel was unaware that [she] would need to utilize" additional coverage).

In sum, CLJ Healthcare didn't promptly notify Owners Insurance of April's death or the lawsuit, as required by the unambiguous terms of the policy, and there was no valid excuse for the delay. The district court therefore didn't err in granting summary judgment for Owners Insurance.[2]

**AFFIRMED.**

---

[2] Because we conclude that CLJ Healthcare didn't provide timely notice of the occurrence or suit, we need not address the district court's other conclusion that Owners Insurance was entitled to summary judgment because the insurance policy excluded coverage for injuries "due to rendering or [the] failure to render any professional service."

14