A00A0690. PLANTATION PIPELINE COMPANY v. ROYAL INDEMNITY COMPANY.
(537 SE2d 165)

SMITH, Presiding Judge.

This appeal arises out of the trial court's grant of summary judgment to Royal Indemnity Company ("Royal") on the ground that Plantation Pipeline Company ("PPL") failed to give proper notice of an occurrence to Royal, as required by insurance policies issued to PPL by Royal. Under the circumstances of this case, we agree with the trial court that the delay in providing notice was unreasonable as a matter of law, and we therefore affirm.

The following facts are undisputed. PPL is an interstate common carrier by pipeline of refined petroleum products. Royal issued insurance policies to PPL, one effective from November 30, 1967 to November 30, 1970, and one effective from November 30, 1970 to November 30, 1973. These policies recite that Royal will pay on the insured's behalf all sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage "caused by an occurrence." The policies further define "occurrence" as "an accident, including injurious exposure to conditions, which results . . . in bodily injury or property damage neither expected nor intended" by the insured. (Emphasis omitted.) The policies also include, in a section labeled "conditions," the following notice provision:

> In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonable obtainable information with respect to the time, place and circumstances thereof, and the name and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

On January 27, 1968, PPL discovered evidence of a leak along its pipeline right-of-way near Kokomo, Mississippi. Over the next two days, PPL work crews observed that leaked gasoline had soaked into the ground before the discovery. On January 29, 1968, two days after the leak was discovered, PPL agreed to pay property owner Dolphus

Jacobs $200 for damage to his cotton crops. On the same date, Jacobs executed a release in favor of PPL agreeing never to assert claims relating to the pipeline leak.

Approximately one year later, nearby property owners Benny and Wanda Dunaway informed PPL that their well water was contaminated with gasoline. PPL determined that this contamination was caused by the leak discovered on January 27, 1968. In February 1969, PPL agreed to pay for the installation of a new water well and pump on the Dunaway property. The following April, PPL expended approximately $600 on the Dunaways' behalf for the well and pump and executed a settlement agreement, in which the Dunaways accepted $400 in consideration of their agreement to release all claims arising out of the leak against PPL.

The parties do not dispute that PPL promptly reported the 1968 leakage to landowners in the area, repaired and pressure checked the pipeline, engaged in extensive testing of the area, and relocated wells for certain landowners. It is also undisputed, however, that PPL failed to notify Royal about these leaks until June 17, 1993, when "PPL advised Royal of a pollution claim in Marion County, Mississippi arising from an escape of petroleum belong[ing] to Plantation Pipeline . . . on or about January 27, 1968." (Punctuation omitted.) This notification to Royal occurred after a third property owner complained of gasoline odor in his well. Several lawsuits were filed against PPL in Mississippi.

PPL then filed this declaratory judgment action seeking, among other things, a declaration that Royal was required to defend and indemnify it under the policies issued by Royal. After Royal answered, PPL moved for partial summary judgment on Royal's duty to defend. Following Royal's response, the trial court denied summary judgment to PPL with respect to coverage for the Mississippi claims and sua sponte granted summary judgment to Royal on the ground that PPL did not comply with the notice provision.[1] The court found that prompt notice was a condition precedent to coverage and defense by Royal, focusing on the releases obtained by PPL from landowners in the late 1960s. The trial court stated as follows:

> In insuring that it obtained a release that freed PPL of any future liability, PPL makes it clear that it feared that the incident could reasonably give rise to a possible claim. At

---

[1] Several lawsuits were also filed against PPL in Alabama, and in its complaint in this case, PPL sought a declaration that Royal was required to defend and indemnify it with respect to these claims. The trial court granted partial summary judgment in favor of PPL with respect to Royal's duty to defend against the Alabama claims. This ruling is not a subject of this appeal.

that point, PPL's duty to notify Royal was triggered. Because PPL failed to notify Royal of the January 1968 pipeline leak until 1993, the Court finds that, as a matter of law, PPL's delay in giving notice of an accident to Royal was unjustified and unreasonable.

PPL then filed a motion seeking, among other things, reconsideration of the trial court's ruling on the late notice issue. The trial court denied this motion as well, and PPL appeals from these rulings.

1. PPL primarily argues that it did not have a duty to notify Royal of the 1968 leak or, alternatively, that whether it gave reasonable notice in 1993 was at least a question for the jury. PPL bases these contentions on the releases obtained in 1968 and 1969 and on the contention that its loss was less than its deductible of $5,000.

In general, the question of whether an insured gave notice of an event or occurrence "as soon as practicable," as required by a policy of insurance, is a question for the factfinder. See, e.g., *Southern Trust Ins. Co. v. Clark*, 148 Ga. App. 579, 582 (1) (251 SE2d 823) (1978). And an insured often may "be able to present evidence of excuse or justification for the delay." *Richmond v. Ga. Farm &c. Ins. Co.*, 140 Ga. App. 215, 220 (2) (231 SE2d 245) (1976). Whether the excuse or justification was sufficient and whether the insured acted diligently in giving the notice "are generally questions of fact, to be determined by the jury, according to the nature and circumstances of each individual case." (Citations omitted.) *Clark*, supra, 148 Ga. App. at 582 (1). See also *State Farm &c. Ins. Co. v. Sloan*, 150 Ga. App. 464, 466 (2) (258 SE2d 146) (1979); *Norfolk & Dedham &c. Ins. Co. v. Cumbaa*, 128 Ga. App. 196, 198-199 (2) (196 SE2d 167) (1973). But even so, we have also held that "[u]nder all of the facts and circumstances of a particular case it may be found that an insured's delay in giving notice of an accident to his insurer was unjustified and unreasonable" as a matter of law. *Richmond*, supra, 140 Ga. App. at 220-221 (2). See also *Protective Ins. Co. v. Johnson*, 256 Ga. 713, 714 (1) (352 SE2d 760) (1987); *KHD Deutz of America Corp. v. Utica Mut. Ins. Co.*, 220 Ga. App. 194, 195 (1) (469 SE2d 336) (1996); *Caldwell v. State Farm &c. Ins. Co.*, 192 Ga. App. 419, 420-421 (2) (385 SE2d 97) (1989).

Citing a number of cases from other jurisdictions, PPL bases its arguments that its notice was reasonable on the "doctrine of trivial occurrence." Then, relying heavily on *Southern Guaranty Ins. Co. v. Miller*, 183 Ga. App. 261 (358 SE2d 611) (1987), PPL contends that this doctrine "has become a fixture of Georgia law." In *Miller*, an employee of the insured was driving the employer's vehicle and was involved in an automobile collision. Because the employer determined from the police report and accounts given by the driver and

another witness that no injuries or significant damage had occurred, the employer "decided to ignore the matter." Id. at 262. On the question of whether the employer's subsequent notice to its insurer was adequate, this court concluded that the employer was justified as a matter of law in not reporting the collision to its insurer in "the absence of any apparent personal injury to the parties involved and the minimal property damage." Id. at 263.

Relying on *Miller*, PPL maintains that by virtue of the releases it obtained and the fact that its loss was far less than the $5,000 deductible, it reasonably believed that it had "assured . . . that no formal claims or lawsuits giving rise to coverage . . . would arise from this leak." According to PPL, as long as it "acted reasonably" in assuming the leak would not give rise to a future claim covered by Royal's policies, it "cannot be penalized for failing to notify Royal until the severity of that occurrence became apparent in the mid-1990s." We agree with PPL that under *Miller*, an insured is "not required to foresee every possible claim, no matter how remote," that might arise from an accident. *Guaranty Nat. Ins. Co. v. Brock*, 222 Ga. App. 294, 295 (474 SE2d 46) (1996). Instead, an insured is "only required to act reasonably under the circumstances." Id.

But under the circumstances of this case, we cannot agree that PPL's failure to notify Royal of the leak for approximately 25 years was reasonable as a matter of law, or even that at least an issue of fact exists as to the reasonableness of PPL's belief in the late 1960s that no further claims would be made. As stated by the trial court, unlike *Miller*, the insured here procured releases from affected landowners, a fact showing PPL's knowledge that more claims could arise.

We do not agree with PPL that obtaining these releases showed that PPL reasonably believed it was protected from future liability or that the possibility of further claims following the 1968 incident was "remote." See *Brock*, supra, 222 Ga. App. at 295. First, although some landowners executed releases in favor of PPL, PPL was not entitled to rely on its own conclusion that it was not liable as a justification for failure to notify Royal of the leakage.

> Justification for failure to give notice as soon as practicable . . . may not include the insured's conclusion that he was free of fault and that there was no liability to the other party. That is the very issue which the company must have reasonable opportunity to investigate with promptness, and which requires a prompt notice of the occurrence.

(Citation and punctuation omitted.) *Richmond*, supra, 140 Ga. App. at 220 (2).

Second, even assuming that PPL correctly concluded that it was not liable to the landowners from whom it obtained releases, it is axiomatic that those releases on which PPL so heavily relies released PPL only from future claims made by two sets of landowners. The evidence presented by PPL itself, however, shows that PPL at least should have foreseen a reasonable likelihood that additional damage related to the 1968 leak could occur. The Dunaway release specifically recited:

> The parties hereto specifically recognize that, while Plantation Pipe Line Company has taken all reasonable precautions to repair the leak and to control, eliminate, and destroy any existing escaped petroleum products, *nevertheless there exists the possibility that with future rains some soaked-in and otherwise hidden petroleum product may be washed up and brought to the surface so as to be a potential source of further pollution.* This release contemplates and includes such eventuality with respect to said leak described aforesaid.

(Emphasis supplied.)

The release recognizes the distinct possibility of further leakage. And as shown by the record, the leakage was not contained to the boundaries of one particular property. As discussed above, in the late 1960s over a period of one year, leakages were found on two separate properties, a fact showing that the leakage was not simply a "trivial" problem confined to one landowner's property. Furthermore, PPL's own evidence belies the notion that the occurrence was "trivial," as PPL reported the 1968 leakage to landowners in the area, repaired the pipeline, engaged in extensive testing, and relocated certain wells.

The purpose of a notice provision in a policy of insurance is to allow the insurer to investigate promptly the facts surrounding the occurrence and to prepare a defense or determine whether a settlement is feasible, while the facts "are still fresh and the witnesses are still available." *Richmond*, supra, 140 Ga. App. at 221 (3). The purpose of the notice provision in the policies issued by Royal was not fulfilled, and we do not agree that PPL offered a sufficient legal justification for its failure to comply with that provision. Summary judgment in favor of Royal was consequently warranted.

This conclusion is not inconsistent with *Lumbermens Mut. Ins. Co. v. Plantation Pipeline Co.*, 214 Ga. App. 23 (447 SE2d 89) (1994), in which we affirmed the grant of summary judgment to Plantation Pipeline on the issue of whether it had given timely notice to its excess insurer. We concluded that no evidence showed that Planta-

tion Pipeline should have known that its liability would exceed the $1,000,000 ceiling of its primary insurance policy. We explicitly distinguished that case from other cases concluding that delay in giving notice to a primary carrier was unreasonable as a matter of law in part on the ground that those cases did not involve excess policies where "the notice obligation [was] triggered by the insured's assessment of the likelihood of the monetary amount of the property damage for which it may be liable exceeding the 'ceiling' of the primary policy." Id. at 25 (1).

2. Relying on language in *M. A. Indus. v. Maryland Cas. Co.*,[2] an unreported federal district court decision, PPL contends that the trial court erroneously considered "extrinsic facts," or facts outside those alleged in the underlying Mississippi complaints, in deciding the issue of whether it provided timely notice to Royal. We do not agree. First, PPL's reliance on *M. A. Industries* is misplaced, since this unreported district court decision is not binding on this court. See generally *Floyd v. First Union Nat. Bank*, 203 Ga. App. 788, 790-791 (1) (417 SE2d 725) (1992) (unreported decisions not binding on this court); *Winburn v. McGuire Investment Group*, 220 Ga. App. 384, 385 (1) (469 SE2d 477) (1996) (federal district court not binding but may be persuasive).

More importantly, it is true that if the facts of a complaint even arguably bring an occurrence within an insurance policy's coverage, the insurer has a duty to defend. See, e.g., *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. 557, 559 (481 SE2d 850) (1997), aff'd, 268 Ga. 564 (490 SE2d 374) (1997); *City of Atlanta v. St. Paul Fire &c. Ins. Co.*, 231 Ga. App. 206, 207 (498 SE2d 782) (1998). And the allegations of the complaint are looked to to determine whether a covered claim has been asserted. Id. But we do not reach the issue of whether PPL asserted a claim that might or might not be covered under the policies issued by Royal, for proper notice was a condition precedent to coverage, as expressly stated by the policies. It is well established that a notice provision expressly made a condition precedent to coverage is valid "and must be complied with, absent a showing of justification. Where an insured has not demonstrated justification for failure to give notice according to the terms of the policy[,] . . . then the insurer is not obligated to provide either a defense or coverage." (Citation omitted.) *Richmond*, supra, 140 Ga. App. at 222 (3). As discussed in Division 1, PPL did not demonstrate justification, as a matter of law, for its failure to provide notice "as soon as practicable" and, therefore, did not comply with a condition precedent to coverage.

---

[2] Civil Action No. 1:92-2659-HTW (N.D. Ga., July 1, 1993).

3. PPL also contends that the facts alleged by the plaintiffs in the underlying Mississippi complaints raise the possibility of separate gasoline leaks after the leak discovered in the late 1960s. Indeed, the Mississippi complaints allege that "other leaks, releases and discharges likely occurred . . . both before and after 1968 as a result of actions, inactions, and conduct of Defendants." But when all of the underlying allegations are considered in their totality, we agree with the trial court that the Mississippi plaintiffs all allege that harm is linked "to the leak which occurred in January 1968."[3] The plaintiffs in the underlying claims also allege that the defendants discovered a leak from PPL's pipelines in 1968 and that PPL knew or should have known in 1968 that the gasoline and its constituent products had contaminated the groundwater. The complaints further recite that despite knowledge of the toxicity and health risk to humans and animals exposed to the gasoline, the defendants failed to prevent continued contamination to area groundwater. Based on these allegations, we cannot say the trial court erred in concluding that the Mississippi complaints link all harm to the 1968 leak.

4. PPL argues that the trial court "misapplied the standards for reviewing summary judgment motions" in three respects. It first maintains that the trial court drew an "unreasonable inference" from the releases PPL obtained from the landowners in the 1960s. We do not agree. For reasons discussed in Division 1, the record supports the finding that by virtue of the releases, PPL demonstrated its knowledge that future claims might arise.

PPL also argues that the trial court erroneously resolved the disputed factual issue of the timeliness of notice. We find no merit in this contention, for as discussed above, a trial court may be authorized to find, under the facts and circumstances of a particular case, that an insured failed to give notice of an occurrence to its insurer "as soon as practicable." The undisputed facts in this case show that PPL knew of a pipeline leak in the late 1960s but failed to report this leak to Royal until 1993, and the justification offered by PPL for its failure to timely notify Royal was unreasonable as a matter of law.

Finally, we reject PPL's argument that the trial court was not authorized to enter a sua sponte grant of summary judgment to Royal. The fact that Royal did not formally move for summary judgment on the issue of notice is not dispositive of the issue. As long as a grant of summary judgment is "proper in all other respects," a trial

---

[3] Only one Mississippi complaint appears in the record, although several were filed. The parties agree, however, that the representations in that complaint are " 'representative' of the allegations in the other Mississippi Claims for the purpose of PPL's partial summary judgment motion on the duty to defend."

court may grant summary judgment sua sponte. *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995). See also *Holmes v. Achor Center*, 242 Ga. App. 887, 891-892 (2) (531 SE2d 773) (2000). "This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment." (Citations and punctuation omitted.) *Hodge*, supra, 217 Ga. App. at 690 (1). In response to PPL's motion for summary judgment, Royal requested the entry of summary judgment in its favor, basing this request on its argument that PPL failed to provide timely notice of the occurrence. In its reply brief, PPL responded to this argument, fully arguing its contention that notice was timely. PPL had full and fair opportunity to respond to Royal's contentions, and the trial court did not err in entering a sua sponte summary judgment in favor of Royal.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED JULY 11, 2000 ▮

*Kilpatrick Stockton, Richard A. Horder, Edmund M. Kneisel, Edward T. Floyd*, for appellant.

*Lord, Bissell & Brook, Michael J. Athans, Corliss L. Worford*, for appellee.