## A08A2059. STATE FARM FIRE AND CASUALTY COMPANY v. WALNUT AVENUE PARTNERS, LLC et al.
## A08A2139. BIG B CLEANERS OF DALTON, INC. et al. v. STATE FARM FIRE AND CASUALTY COMPANY.
## A08A2146. WALNUT AVENUE PARTNERS, LLC v. STATE FARM FIRE AND CASUALTY COMPANY.
### (675 SE2d 534)

PHIPPS, Judge.

These consolidated appeals involve a claim and counterclaim for declaratory judgment to determine the liabilities of State Farm Fire and Casualty Company under two insurance policies issued to Big B Cleaners of Dalton, Inc., the "Umbrella Policy" and the "Business Policy." The cleaners and its officers, Sharad "Sam" Desai and Anil Naik (collectively, "Big B"), were sued in a separate action by Walnut Avenue Partners, LLC ("Walnut") for damages allegedly caused by the release of a dry cleaning chemical into the parking lot of a shopping center owned by Walnut. The trial court granted in part and denied in part various summary judgment motions filed by the parties, and finding no error, we affirm all the judgments on appeal.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] We review the grant or denial of a motion for summary judgment de novo, viewing the evidence, and all reasonable conclusions and inferences drawn therefrom, in the light most favorable to the nonmovant.[2]

The record shows that Desai and Naik began operating Big B Cleaners in the 1980s and incorporated the business in 1993. They leased a freestanding building on the property of a shopping center that subsequently was purchased by Walnut. In purchasing the shopping center, Walnut learned of environmental problems with the dry cleaner premises, and it hired a company to address potential environmental contamination. The company reported finding soil

---

[1] *Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assn.,* 288 Ga. App. 355, 356 (654 SE2d 207) (2007).
[2] *Osman v. Olde Plantation Apts. &c.,* 270 Ga. App. 627 (607 SE2d 236) (2004).

and groundwater contamination on the dry cleaner premises and in the shopping center parking lot. There is no evidence that Big B saw the company's reports to Walnut, but environmental contamination was discussed in negotiations between Big B and Walnut for a new lease.

After Big B decided not to renew its lease, Walnut sent Big B a letter that, among other things, demanded indemnification for costs associated with remediating the contamination. In response, Big B disclaimed any obligation concerning remediation.

On April 25, 2002, Walnut filed the underlying action against the corporation and against Desai and Naik in their individual capacities, seeking to recover from Big B damages connected with remediating the shopping center property. On April 30, Big B's attorney notified State Farm of the lawsuit. State Farm initially assumed the defense of the corporation and the individual defendants pursuant to the Umbrella Policy and the Business Policy, subject to a reservations of rights form signed by Desai and Naik in their capacities as officers of Big B. On June 23, 2004, however, State Farm notified Big B that it would no longer provide a defense to the lawsuit under the Umbrella Policy, on the ground that the claim was not covered under that policy. On July 6, 2005, State Farm sought a declaratory judgment that it was not obligated to provide a defense under the Business Policy, either. Walnut counterclaimed for a declaratory judgment, seeking to establish Big B's coverage obligation under both policies.[3]

## Case No. A08A2059

1. The trial court held that both policies covered property damage to common areas arising from quick, abrupt and accidental pollution. On appeal, State Farm asserts that this holding contradicts the unambiguous language of the Umbrella Policy's pollutant exclusion.

The Umbrella Policy covers Big B's liability for certain property damage. Exclusion 6 of the Umbrella Policy, however, provides in pertinent part that coverage shall exclude certain specified instances of "property damage . . . arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, spill, release or escape of pollutants[.]" Two endorsements to the policy further address property damage arising out of the discharge of pollutants. The first, titled "Amendatory Endorsement," provides that "Exclusion 6 . . . does not apply to any . . . property damage . . . arising out

---

[3] State Farm unsuccessfully opposed Walnut's counterclaim below, but has not enumerated on appeal any error concerning the counterclaim.

of the actual, alleged or threatened discharge, dispersal, spill, release or escape of pollutants which occurs quickly and abruptly and is accidental." The second, titled "Pollution Liability Exclusion Endorsement," excludes from coverage "any . . . property damage arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, spill, release or escape of pollutants." State Farm contends that the unambiguous language of the Pollution Liability Exclusion Endorsement "eliminates *any* pollution coverage which might have otherwise existed under the [Umbrella Policy], notwithstanding [the policy's] Exclusion 6 . . . and [the policy's] Amendatory Endorsement." We disagree.

The existence of ambiguity in a contract is a question of law for the court.[4] We do not examine the language of the Pollution Liability Exclusion Endorsement in a vacuum, but rather consider that language in concert with other policy language addressing coverage of property damage arising out of the discharge of pollutants.[5] The Amendatory Endorsement narrows the scope of Exclusion 6 by exempting from it discharges that are quick, abrupt, and accidental; but the Pollution Liability Exclusion Endorsement broadens the scope of Exclusion 6 by extending the exclusion to any discharge. We find the inconsistent language of these two endorsements to be ambiguous.

"Where an insurer grants coverage to an insured, any exclusions from that coverage must be defined clearly and distinctly."[6] Under OCGA § 13-2-2 (5), ambiguous language in an insurance contract must be construed strictly against the insurer and in favor of the insured.[7] And under OCGA § 13-2-2 (4), a contract must be construed where possible to uphold the contract in whole and in every part, avoiding interpretations that render portions of the contract language meaningless.[8] State Farm's interpretation of the Umbrella Policy to exclude from coverage even those damages arising out of a quick, abrupt and accidental discharge of pollutants renders meaningless the Amendatory Endorsement's exemption of such discharges from exclusion. Applying the "quick, abrupt and accidental" exemption to the Pollution Liability Exclusion Endorsement, how-

---

[4] *Snipes v. Marcene P. Powell & Assoc.*, 273 Ga. App. 814, 816 (1) (616 SE2d 152) (2005); see generally OCGA § 13-2-1.

[5] See OCGA §§ 13-2-2 (4) ("the whole contract should be looked to in arriving at the construction of any part"); 33-24-16 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy.").

[6] *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996) (citation omitted).

[7] Id.

[8] See *Coweta County v. City of Senoia*, 275 Ga. 707, 708 (2) (573 SE2d 21) (2002).

YALE LAW LIBRARY

ever, does not render that endorsement meaningless, because the endorsement still excludes a broader category of damages arising out of the discharge of pollutants than did Exclusion 6.

We find the trial court did not err in construing the Umbrella Policy to provide coverage to quick, abrupt and accidental discharges of pollutants.[9]

2. The trial court found an issue of fact concerning whether Big B gave State Farm timely notice of an "occurrence" under the policies, precluding summary judgment. State Farm asserts that this finding was error, on the ground that Big B did not satisfy the requirement, found in both policies, that it "see to it that [State Farm was] notified promptly of an occurrence that may result in a claim."

Whether an insured gave an insurer timely notice of an event or occurrence under a policy generally is a question for the factfinder.[10]

[A]n insured often may be able to present evidence of excuse or justification for the delay. Whether the excuse or justification was sufficient and whether the insured acted diligently in giving the notice are generally questions of fact, to be determined by the jury, according to the nature and circumstances of each individual case.[11]

Nevertheless, the facts and circumstances of a particular case may render an insured's delay in giving notice of an occurrence to his insurer unjustified and unreasonable as a matter of law.[12] Conversely, "if an ordinarily prudent person acting reasonably would not conclude that an incident would give rise to a possible claim, a court can determine as a matter of law that the insured was justified in not notifying the insurer of the incident."[13]

It is undisputed that Big B notified State Farm of Walnut's action within a week of its filing. The parties contest, however, whether Big B had earlier knowledge of an "occurrence" under the

---

[9] The trial court did not rule on whether the undisputed evidence showed that the release of the dry cleaning chemical was quick, abrupt, and accidental, and the parties do not raise this issue in their arguments on appeal. Accordingly, we do not consider whether a material factual question exists concerning the quick, abrupt, and accidental nature of the discharge.

[10] See *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 25 (1) (537 SE2d 165) (2000).

[11] Id. (citations and punctuation omitted).

[12] Id.; see, e.g., *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484, 490 (649 SE2d 602) (2007) (holding one-year delay unreasonable as a matter of law); *Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316-317 (1) (562 SE2d 267) (2002) (same); *Snow v. Atlanta Intl. Ins. Co.*, 182 Ga. App. 1, 2 (354 SE2d 644) (1987) (holding ten-month delay unreasonable as a matter of law).

[13] *Guaranty Nat. Ins. Co. v. Brock*, 222 Ga. App. 294, 295 (1) (474 SE2d 46) (1996) (citation omitted).

policies that rendered this notice untimely. The policies define "occurrence," in pertinent part, as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in . . . property damage[.]"

The evidence showed that, during their 1999 and 2000 lease negotiations, Big B and Walnut discussed the alleged chemical contamination. Their attorneys exchanged letters that referred to the expense of remediating the property for contamination. Walnut wanted the new lease to include an additional $100,000 for remediation, and a Walnut representative told Desai, "If you want to sign a lease, you pay me $100,000 because you contaminated my property." The parties also contemplated entering into a covenant not to sue. A draft of this covenant stated that Walnut had "previously incurred various clean-up expenses relating to the Shopping Center in which the Leased Premises are located," specifically "soil contamination . . . from tetrachloroethylene beneath the floor of the Leased Premises," and referred to a dispute about the cause of the contamination. The draft also provided that Desai and Naik would pay Walnut a sum in connection with the costs of cleaning up the soil contamination and that Walnut would not bring an action against Big B for the contamination.

In a November 22, 2000 demand letter written after Big B decided not to renew its lease, Walnut indicated that environmental audits had disclosed soil and groundwater contamination at the shopping center "resulting from releases of perchloroethene from dry cleaning machines and related dry cleaning operations located at the Big B Cleaners facility"; that the releases had been reported to the state Environmental Protection Division; and that an environmental cleanup was ongoing. The letter further stated that Big B was obligated under its lease to indemnify, defend, and hold Walnut harmless from any losses resulting from the contamination, and it concluded: "Demand is made herewith that you immediately contact the undersigned attorney for [Walnut] to initiate, coordinate and fully accomplish all such response and remediation activities as may be required at the Shopping Center under provision of applicable law."

Big B's attorney deposed that he believed the discussion of contamination during the lease negotiations was simply a tactic by Walnut to obtain more favorable lease terms. He also deposed that Walnut's act of filing the lawsuit represented the first time Big B was made aware of claims "to property outside the leased premises and in a context outside lease negotiations."

An insured is not justified in failing to give notice by the belief that an insurance policy does not cover an occurrence.[14] An insured, however, is not required to foresee every possible claim that might arise from an incident.[15] We find material questions of fact concerning whether and when Big B learned of chemical contamination in areas of the shopping center that would require it to give State Farm notice of an "occurrence" under the policies, and concerning whether Big B acted reasonably in waiting until Walnut had filed an action before giving State Farm notice. Accordingly, we conclude that the trial court properly denied summary judgment to State Farm.

### Case No. A08A2139

3. Big B asserts that the trial court erred in denying its motion for summary judgment, contending that the undisputed evidence showed that, prior to Walnut filing an action against Big B, no conditions existed to make Big B aware of an occurrence requiring notice under the policies with State Farm, and that Big B accordingly complied with the notice requirements of those policies. For the reasons set forth in Division 2, supra, we conclude that the trial court properly found questions of material fact that preclude summary judgment.

4. Big B contends that State Farm waived any claim of untimely notice against Desai and Naik, as individuals, because State Farm assumed their defense, knowing of the timeliness issue, but without giving notice of its reservation of rights.

It has long been the rule in Georgia that a liability insurer who assumes the conduct of the defense to an action with knowledge of facts constituting noncoverage and without disclaiming liability and giving notice of its reservation of rights is thereafter estopped from denying coverage. The insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position.[16]

On May 16, 2002, a State Farm agent gave Desai and Naik two documents titled "Request for Claim Service and Non-Waiver of Rights," one for each policy. These documents provided, in pertinent

---

[14] See *Allstate*, supra.

[15] *Plantation Pipeline*, supra at 26.

[16] *O'Brien Family Trust v. Glen Falls Ins. Co.*, 218 Ga. App. 379, 380 (1) (461 SE2d 311) (1995) (citations and punctuation omitted).

part:

> The undersigned request[ ] and authorize[ ] [State Farm] to investigate, negotiate, settle, deny, or defend any claim arising out of such reported event as it deems expedient. Such action shall not waive any right [State Farm] may have to deny any obligation under the policy contract, and shall not waive any rights of the undersigned.

Both men signed these documents. Because they signed in their capacities as corporate officers, rather than in their individual capacities, Big B contends that they were not provided sufficient notice of State Farm's reservation of rights. Georgia law, however, does not require an insured's signature on a reservation of rights form, but recognizes that an insurer can reserve its rights unilaterally[17] or with the implied consent of the insured.[18] The facts of this case show implied consent: Desai and Naik were presented with the reservation of rights form, signed it in their corporate capacities, lodged no objection to it in their individual capacities, and enjoyed in their individual capacities the benefit of legal representation authorized by the form.[19] We find no error in the court's denial of summary judgment.

### Case No. A08A2146

5. Walnut contends that the trial court erred in finding a factual question concerning whether Big B gave timely notice of Walnut's claim against it. For the reasons set forth in Division 2, supra, we conclude that the trial court properly found questions of material fact that preclude summary judgment.

*Judgments affirmed. Johnson, P. J., and Barnes, J., concur.*

### DECIDED MARCH 16, 2009.

*Lloyd B. Hedrick, Jr.*, for State Farm Fire and Casualty Co.
*Coppedge & Leman, Warren N. Coppedge, Jr., Joseph B. Evans*, for Walnut Avenue Partners, LLC.

---

[17] See *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 217-219 (1) (231 SE2d 245) (1976).

[18] See *Jacore Systems v. Central Mut. Ins. Co.*, 194 Ga. App. 512, 514 (1) (b) (390 SE2d 876) (1990).

[19] See id.

*Robert A. Cowan*, for Big B Cleaners of Dalton, Inc.