The AMERICAN INSURANCE COMPANY and Fireman's Fund Insurance Company, Plaintiffs,

v.

The EVERCARE COMPANY, Defendant.

Civil Action No. 1:09–cv–2698–TCB.

United States District Court, N.D. Georgia, Atlanta Division.

May 5, 2010.

James A. Knox, Michael J. DiSantis, James R. Murray, Tressler, LLP, Chicago, IL, Kenan G. Loomis, Alycen A. Moss, Cozen & O'Connor, Atlanta, GA, for American Insurance Company and Fireman's Fund Insurance Company.

Shattuck Ely, Megan Claire Haley, Fellows La Briola, LLP, Atlanta, GA, for The Evercare Company.

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

Before the Court is Plaintiffs The American Insurance Company and Fireman's Fund Insurance Company's motion for summary judgment [16].

## I. Background

Defendant Evercare Company, a Delaware corporation doing business in Georgia, is engaged in the manufacture, marketing and distribution of lint rollers and other consumer houseware products. American and Fireman's Fund insured Evercare under certain general liability policies from July 1, 2005 to December 1, 2006.

### A. Plaintiffs' Insurance Policies

American issued primary liability insurance policies to Evercare. Under American's policies, coverage was provided for personal and advertising injury. The policies stated in pertinent part that "[t]his insurance applies to personal and advertising injury caused by an offense arising out of your [Evercare's] business but only if the offense was committed in the coverage territory during the policy period." Per-

sonal and advertising injury "means injury ... arising out of one or more of the following offenses ... The use of another's advertising idea in your advertisement; or [i]nfringing upon another's copyright, trade dress or slogan in your advertisement." Its policies also stated that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense ... without [American's] consent."

Fireman's Fund issued excess liability insurance policies to Evercare. Its policies provided coverage for "those sums in excess of Primary Insurance that any Insured becomes legally obligated to pay as damages provided that such damages a. [a]re covered by Primary Insurance; b. [a]rise from injury or damages that occurs, or from an offense committed, during our Policy Period."

Both American's and Fireman Fund's policies imposed notice requirements on Evercare. American's policies required that it be notified "as soon as practicable of an occurrence or an offense which may result in a claim." Its policies also required notice as soon as practicable "[i]f a claim is made or suit is brought against" Evercare.

Fireman Fund's policies required that it be notified "as soon as practicable a. [o]f any Occurrence which may result in a claim under this policy, when the Occurrence is known to [y]our office or insurance manager; b. [i]f a claim is made or Suit is brought against any Insured." Its policies also stated that "[o]ccurrence has the same meaning as the term 'occurrence' contained in Primary Insurance. But with respect to personal and advertising injury as defined in Primary Policies, the term means a personal and advertising injury offense."

## B. Dispute and Settlement with 3M

Evercare's leading competitor in the business of consumer lint rollers is 3M Company. In a letter dated March 22, 2007 and addressed to Douglas Taeckens, Evercare's president and COO, 3M's general counsel listed seven[1] of Evercare's advertising claims that 3M alleged to be "false, misleading and/or deceptive." The letter stated that 3M also objected to certain lint roller packaging on the grounds that Evercare's lint rollers were "packaged in trade dress[2] that is plainly intended to benefit from the goodwill associated with products of 3M Company." After detailing why 3M thought Evercare's advertising claims were false, misleading and/or deceptive, the letter demanded that Evercare cease using or modify these claims. 3M's general counsel concluded the letter by stating that he was "hopeful that these matter can be resolved amicably on a company-to-company level rather than through other forums."

In a letter dated March 31, 2007, Evercare's counsel wrote a letter to 3M's counsel denying 3M's allegations and stating that he did not believe that 3M could substantiate its allegations. Evercare also requested the data upon which 3M relied so that Evercare could fully respond to the

---

**1.** 3M objected to the following advertising claims:

 (1) "America's Best Selling Lint Roller!"
 (2) "America's # 1 Selling Lint Roller* *Based on independent national retail sales data"
 (3) "37% Stickier! than the leading competitor"
 (4) "50% Stickier"
 (5) "Picks up 50% More Lint! Than leading competitor"
 (6) "Removes even more lint, dust, dandruff and pet hair!"
 (7) "Dry Cleaner Grade"

**2.** 3M objected to Evercare's use of the phrase "Super Sticky," which 3M asserted that it had extensively used since 2003.

March 22 letter. Specifically, Evercare requested the 52–week sales data for all U.S. retail outlets for the period ending March 2007. Evercare did not notify American or Fireman's Fund of this letter or 3M's allegations.

In a letter dated August 15, 2007, 3M notified the Director of the National Advertising Division[3] of its objections to Evercare's advertising claims, which 3M considered false, misleading and/or deceptive. In support of its position, 3M included information similar to that provided to Evercare in the March 22 letter. At the end of the letter, 3M "urge[d] the NAD to recommend that Evercare discontinue making these claims immediately." In a letter dated August 16, 2007, 3M notified Evercare of its NAD challenge and attached a copy of the letter. Once again, Evercare did not notify American or Fireman's Fund of this letter or 3M's allegations.

On September 11, 2007, Evercare filed a preemptive lawsuit against 3M in this Court. Evercare sought a declaratory judgment that it was not engaged in false advertising or trade dress infringement. On October 4, 2007, 3M filed a counterclaim against Evercare, asserting that certain of Evercare's advertising claims were false and misleading. It sought relief pursuant to various provisions of the Lanham Act, the Georgia Deceptive Trade Practices Act, the Georgia Unfair Competition statute, and common law unfair competition. Evercare did not notify American or

Fireman's Fund of 3M's counterclaim even though the challenged advertising claims had been used during their coverage period.[4]

In June 2008, Evercare received 3M's damages expert's report, which Evercare alleges is the first time that it knew that certain offenses fell within Plaintiffs' coverage periods. On July 11, 2008, Evercare's insurance broker finally tendered to Plaintiffs the defense and indemnity of Evercare against 3M's counterclaim by submitting four notice of occurrence forms. This was Evercare's first notice to Plaintiffs of the dispute between Evercare and 3M.

In a September 11, 2008 letter, Plaintiffs disclaimed coverage on the basis of Evercare's breach of the notice conditions of Plaintiffs' policies. Plaintiffs advised Evercare that if it disagreed with their position or had additional information bearing on their conclusion of no coverage, Evercare was to advise the assigned claims specialist as soon as possible.

In December 2008, Evercare notified Plaintiffs that it had entered into a settlement with 3M. Evercare demanded that Plaintiffs indemnify Evercare for the settlement and pay its defense costs. Between the September 11 letter and notification of the settlement, Evercare had not responded to Plaintiffs' denial of coverage or notified Plaintiffs that it was negotiating a settlement with 3M.

---

**3.** The NAD of the Council of Better Business Bureaus reviews national advertising for truthfulness and accuracy in order to foster public confidence in the credibility of advertising. Any person or legal entity may submit to NAD any complaint regarding national advertising. The process reflects the advertising industry's process of voluntary self-regulation.

**4.** In November 2007, Evercare did, however, notify its current general liability policy insurer, American Alternative Insurance Corporation, and its current excess liability insurer, Chartis Casualty Company. In a January 2, 2008 letter, AAIC informed Evercare that it would only provide coverage for damages arising out of an offense committed during the December 1, 2006 to December 1, 2007 policy period, and that it would not provide coverage for damages arising out of an offense not committed during the policy period.

On September 30, 2009, Plaintiffs filed this suit for a declaratory judgment that it has no duty to indemnify Evercare or pay for its defense costs under the policies with respect to the 3M litigation.

On November 3, 2009, Evercare filed a motion to dismiss for lack of subject matter jurisdiction. On March 8, 2010, the Court issued an order denying that motion.

On March 17, 2010, Plaintiffs filed a motion for summary judgment, contending that their notice provisions were a condition precedent that Evercare failed to satisfy and that as a result, they are not obligated to provide coverage.

On March 22, 2010, Evercare filed its answer and a counterclaim against Plaintiffs. In its counterclaim, Evercare avers that Plaintiffs breached their insurance policies with Evercare by refusing to pay defense costs associated with and the settlement arising from the 3M litigation.

## II. Legal Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477

U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.*

## III. Analysis

Both of Plaintiffs' policies require Evercare to notify Plaintiffs "as soon as practicable" of any occurrence or offense that may result in a claim. Plaintiffs contend that Evercare's failure to give them notice until July 11, 2008 of advertising injury offenses that could give rise to a claim was unreasonable as a matter of law, as the notice was provided sixteen months after 3M's March 22 letter, ten months after Evercare sued 3M, and nine months after 3M filed its counterclaim. Evercare counters that until 3M produced its damages expert's report in June 2008, it did not know that 3M was seeking damages arising from events occurring during Plaintiffs' coverage periods. Evercare contends that 3M's counterclaim and initial disclosures never identified when its injuries began or when Evercare's advertising became false, and therefore it was justified in delaying notice to Plaintiffs until it received the damages report.

 Both parties agree that Georgia law governs the insurance policies, and under Georgia law, insurance is a matter of contract and all parties are bound by the terms of the insurance policy. *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga.App. 215, 221, 231 S.E.2d 245, 249 (1976). "Ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion

from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 328, 498 S.E.2d 492, 494 (1988).

A notice provision enables the insurer "to inform itself promptly concerning the accident, so that it may investigate the circumstances, prepare for a defense, if necessary, or be advised whether it is prudent to settle any claim arising therefrom." *Se. Express Sys. Inc. v. S. Guar. Ins. Co.*, 224 Ga.App. 697, 701, 482 S.E.2d 433, 436 (1997).

Under Georgia law, "timely notice to the insurer of a claim or occurrence is a condition precedent to the insurer's duty to defend or pay." *Equitable Life Assurance Soc'y v. Studenic*, 77 F.3d 412, 415 (11th Cir.1996). This requirement is met as long as notice is given "with reasonable diligence and within a reasonable length of time in view of the attending circumstances of *each particular case.*" *Studenic*, 77 F.3d at 415 (quoting *Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc.*, 132 Ga.App. 714, 719, 209 S.E.2d 6, 9 (1974)). However, "under all of the facts and circumstances of a particular case it may be found that an insured's delay in giving notice of [a loss] to his insurer was unjustified and unreasonable." 77 F.3d at 415 (quoting *Dillard v. Allstate Ins. Co.*, 145 Ga.App. 755, 756, 245 S.E.2d 30, 31 (1978)).

"In general, the question of whether an insured gave notice of an event or occurrence as required by a policy of insurance, is a question for the factfinder." *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga.App. 23, 25, 537 S.E.2d 165, 167 (2000). An insured may often be able to present evidence of excuse or justification for the delay, and "whether the excuse or justifi-

cation is sufficient and whether the insured acted diligently in giving the notice are 'generally questions of fact, to be determined by the jury, according to the nature and circumstances of each individual case.'" *Id.*, 537 S.E.2d at 167. However, courts have also held that "'under all of the facts and circumstances of a particular case it may be found that an insured's delay in giving notice ... to his insurer was unjustified and unreasonable' as a matter of law." *Id.*, 537 S.E.2d at 167.

Evercare contends that the reasonableness of its delay is a fact issue because it did not know until June 2008 that 3M was seeking damages for advertising injuries suffered during Plaintiffs' coverage periods.

In evaluating the reasonableness of an insured's excuse, Georgia courts apply an objective standard, viewed from the vantage point of the ordinary policyholder. *Guar. Nat'l Ins. Co. v. Brock*, 222 Ga.App. 294, 295, 474 S.E.2d 46, 48 (1996). "The duty to provide notice to the insurer is triggered when the insured actually knew or should have known of the possibility that it might be held liable for the occurrence in question." *S.C. Ins. Co. v. Coody*, 957 F.Supp. 234, 237 (M.D.Ga.1997). An insured "cannot avoid the requirement of prompt notice by claiming that it believed it was not liable." *Id.* at 238. *See also Allstate Ins. Co. v. Walker*, 254 Ga.App. 315, 316, 562 S.E.2d 267, 268 (2002) ("The law requires more than just ignorance, or even misplaced confidence, to avoid the terms of a valid contract."). Stated another way, "if an ordinarily prudent person acting reasonably would not conclude that an incident would give rise to a possible claim, a court can determine as a matter of law that the insured was justified in not notifying the insurer of the incident." *State Farm Fire & Cas. Co. v. Walnut*

*Ave. Partners, L.L.C.,* 296 Ga.App. 648, 651, 675 S.E.2d 534, 538 (2009).

■ Applying these standards, the Court finds Evercare's explanation unreasonable as a matter of law. It is undisputed that Evercare received 3M's March 2007 letter notifying Evercare of alleged issues with Evercare's advertising claims. The letter stated that 3M wanted to resolve the issue amicably rather than through "other forums" but reiterated that 3M considered the issues "critically important." Evercare's response to this letter was to deny 3M's allegations, but it still requested sales data for sales occurring during Plaintiffs' coverage periods. It is also undisputed that in September 2007 Evercare filed a preemptive suit in this Court rather than respond to 3M's claim filed with the NAD. Finally, it is undisputed that in October 2007 3M filed a counterclaim based on the allegations contained in its March 2007 letter and NAD claim.

The duty to provide notice is triggered when Evercare knew or *should have known* that it might be liable for an occurrence that fell within Plaintiffs' coverage periods. Objectively, an ordinary policyholder in Evercare's position should have known that 3M's counterclaim might have resulted in a claim against Evercare for damages incurred during Plaintiffs' coverage periods. Plaintiffs' insurance policies had only expired three months prior to 3M's March 2007 letter, and at least some of the disputed advertising claims had been used during Plaintiffs' coverage periods.[5] Furthermore, in its March 31, 2007 letter, Evercare asked for sales data that included sales occurring during Plaintiffs' coverage periods.

Evercare contends that it did not *know* that 3M's counterclaim included offenses covered by Plaintiffs' policies because 3M failed to provide specific dates. However, the inquiry is not whether Evercare knew, but whether an ordinary policyholder such as Evercare knew or should have known. An ordinary policyholder such as Evercare should have known that a claim may arise under Plaintiffs' policies. *See Evanston Ins. Co. v. Stonewall Surplus Lines Ins., Co.,* 111 F.3d 852, 861 (11th Cir.1997) ("An insured cannot be heard to say it did not know when it did not inquire. The insured must use due diligence and take appropriate steps to make an informed judgment regarding the nature and amount of the claim.").

Evercare hired counsel immediately after receiving 3M's March letter. In September 2007, Evercare sued 3M based on 3M's allegations in its March 22 letter and NAD claim. 3M's counterclaim was also based on the March allegations. Thus, by the time it filed suit and later received 3M's counterclaim, Evercare had had over six months to investigate 3M's allegations with assistance of counsel. Moreover, in November 2007 Evercare notified its current liability insurers, AAIC and Chartis, whose coverage began the day after Plaintiffs' coverage ended, of 3M's counterclaim. *See Alea London Ltd. v. Cook,* No. 4:06–cv–238–HLM, 2007 WL 5376619, at *15 (N.D.Ga. Sept. 19, 2007) (finding insured's delay unjustified where insured knew the plaintiff was injured by the incident and immediately informed a third party of the incident). Clearly, Evercare understood what liability policies such as Plaintiffs' covered and that 3M's counterclaim fell

---

5. Evercare contends that the falsity of the challenged advertisements depended on sales data and thus it could not know exactly when the claims became false. Not all of the disputed advertising claims, however, relied on market data to determine when they were false. For example, 3M challenged Evercare's advertising claim that its lint rollers were "Dry Cleaner Grade" and also asserted that Evercare's packaging infringed 3M's trade dress.

within that coverage. *Cf. Ne. Ins. Co. v. Townsend,* 169 Ga.App. 886, 887, 315 S.E.2d 463, 465 (1984) (finding insured's lack of knowledge of what the policy covered and truthfulness as to that contention proper jury questions).

Further underscoring that Evercare should have known that a claim might arise under Plaintiffs' policies is AAIC's January 2008 letter, which explicitly warned Evercare that damages arising outside of AAIC's coverage period would not be covered. Finally, the advertising claims at issue were used during Plaintiffs' coverage periods. Thus, Evercare's subjective belief that it did not know that 3M would seek damages arising from advertising claims used during Plaintiffs' coverage periods until it received 3M's damages expert's report "cannot be used to justify any delay in notifying the insured." *Coody,* 957 F.Supp. at 238.

In support of its justification for delayed notice, Evercare relies on *Walnut Ave. Partners,* 296 Ga.App. at 651, 675 S.E.2d at 538. Evercare's reliance on that case, however, is misplaced, as it clearly supports the conclusion that Evercare's delay in notice was unjustified; the insured notified its insurer of the lawsuit within a week of the suit's filing. Here, Evercare did not promptly notify Plaintiffs of 3M's counterclaim. Rather, it waited another nine months. So, setting aside the effect of 3M's March 2007 letter and August 2007 NAD claim on Evercare's duty to notify Plaintiffs, in October 2007 Evercare should have known that the advertising claims at issue could lead to a claim covered by Plaintiffs' policies.

As a matter of law, Evercare's notice to Plaintiffs in July 2008, nine months after 3M's counterclaim was filed, was not "as soon as practicable," as the policies required, and the delay is a clear violation of the unambiguous notice requirements in both policies.[6] *See Kay–Lex Co. v. Essex Ins. Co.,* 286 Ga.App. 484, 490, 649 S.E.2d 602, 608 (2007) (holding that unjustified one-year delay was unreasonable as a matter of law). Furthermore, Evercare has offered insufficient evidence of a reasonable justification or excuse for failing to notify Plaintiffs. Accordingly, Plaintiffs have no duty to indemnify Evercare or pay for its defense costs under the policies with respect to the 3M litigation.

## IV. Evercare's Counterclaim

On March 22, 2010, Evercare filed with its answer a counterclaim against Plaintiffs and its other liability insurers, seeking damages allegedly caused by Defendants-in-counterclaim's breaches of their duties to defend and indemnify Evercare with respect to the 3M litigation. Evercare asserts that Plaintiffs breached their insurance policies with Evercare by (1) refusing to defend Evercare and reimburse Evercare for its defense costs, and (2) refusing to contribute to the settlement or reimburse Evercare for the settlement with 3M.

Because the Court holds that American and Fireman's Fund do not have a duty to indemnify Evercare for or pay defense

---

**6.** The Court rejects Evercare's contention that its delay in notifying Fireman's Fund is also justified because there is no evidence that Evercare should have reasonably expected a claim for than $1 million prior to June 2008. However, as Evercare states, "notice to an excess carrier is required only when the insured had reason to believe that it is probable that the limits of the underlying policies would be exhausted." Evercare notified Chartis, its excess carrier when 3M filed its counterclaim, immediately. This supports the conclusion that Evercare had reason to believe that the limits of the underlying policies might be exhausted. Consequently, Evercare was not justified in delaying notification to Fireman's Fund.

costs associated with the 3M litigation, the Court *sua sponte* enters summary judgment in favor of American and Fireman's Fund on Evercare's counterclaim. *See Artistic Entm't, Inc. v. City of Warner Robins,* 331 F.3d 1196, 1202 (11th Cir.2003) ("[W]here a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided."). *Accord Keh v. Americus & Sumter County Hosp.,* —— Fed.Appx. ——, ——, 2010 WL 1718700, at *3 (11th Cir. Apr. 29, 2010).

## V. Conclusion

The Court GRANTS Plaintiffs The American Insurance Co. and Fireman's Fund Insurance Co.'s motion for summary judgment [16]. The Court *sua sponte* GRANTS Defendants-in-counterclaim The American Insurance Co. and Fireman's Fund Insurance Co.'s summary judgment on Evercare's counterclaim [28]. At this time, the disposition of this motion does not affect Evercare's counterclaim against the other Defendants-in-counterclaim.